**L & M INDUSTRIES, INC., Plaintiff-Appellant,**

v.

**George F. KENTER, Food and Drug Hearing Officer, Food and Drug Administration, Brooklyn, New York, Defendant-Appellee.**

No. 112, Docket 71–1551.

United States Court of Appeals, Second Circuit.

Argued Oct. 6, 1971.

Decided April 10, 1972.

Milton A. Bass, Sheldon S. Lustigan, David L. Ficksman, Bass & Ullman, New York City, for plaintiff-appellant.

Carl I. Stewart, David G. Trager, Edward R. Korman, Asst. U. S. Attys., Robert A. Morse, U. S. Atty., for defendant-appellee.

Before FRIENDLY, Chief Judge, and WATERMAN and SMITH, Circuit Judges.

WATERMAN, Circuit Judge:

The plaintiff, L & M Industries, Inc. (L & M) appeals from Judge Walter Bruchhausen's final judgment and order of April 20, 1971, entered in the United States District Court for the Eastern District of New York, dismissing L & M's complaint for lack of jurisdiction

over the subject matter and for failure to state a claim upon which relief could be granted.

The defendant is a Food and Drug Officer employed by the U.S. Food and Drug Administration, who had obtained a sampling of a shipment from Europe which plaintiff was seeking to import, and had then detained the shipment because of an alleged misbranding. L & M had sought the issuance of an order restraining the defendant from any further detention of plaintiff's goods and requiring the F.D.A. to act upon L & M's Application for Authorization to Relabel and to release the detained goods belonging to it. While the issue was pending before the court below, the F.D.A. denied plaintiff's Application, and the Regional Commissioner of Customs gave the importer 90 days in which to remove the material from the country.

Shortly after the filing and service of the complaint Judge Bruchhausen, 321 F.Supp. 1131, denied plaintiff's motion for a preliminary injunction pending hearing on the merits and disposition of the prayer for a permanent injunction. Defendant then moved for dismissal of the complaint, and plaintiff cross-moved for summary judgment on the ground that the F.D.A.'s action was arbitrary.

Affidavits were submitted in support of each motion and the court was shown that the F.D.A. had requested information from L & M and, acting on the information the F.D.A. possessed, it appeared that the product could not be relabeled so as to be in compliance with law.

Accordingly, the court held that the F.D.A.'s determination was not arbitrary and that unless the agency had acted arbitrarily, capriciously or unlawfully in the exercise of its discretionary authority its decision was not subject to judicial review. We are convinced that the appellee here has acted beyond the scope of his statutory authority in failing to provide a meaningful opportunity for the plaintiff-appellant to appear before the Secretary of Health, Education and Welfare and introduce testimony relating to the key issue of whether the goods are adulterated, an opportunity provided for by 21 U.S.C. § 381(a). We reverse the judgment and order below and remand with instructions to proceed in accordance with the disposition expressed in this opinion.

L & M Industries, Inc. is a New York corporation engaged in the business of importing and selling a dietary supplement known as "Bio-Strath Elixir" which is also labeled "Herbal Yeast Food Supplement." A description of the manner in which Bio-Strath is manufactured is contained in the appellee's brief. According to the information supplied to the F.D.A., "a specially grown strain of yeast is fed on a mixture of 27 herbs to cause the growth of the yeast cells during which time, ostensibly, the yeast cells absorb the various herbs. This mixture is subsequently processed, the yeast then fermented, and several ingredients are added to the liquid yeast which results. This mixture is then bottled for sale."

After an examination of the product, the Food and Drug Administration issued on October 28, 1970 a Notice of Detention and Hearing informing the appellant that it had been concluded that a shipment comprised of 720 cartons of Herbal Yeast Food Supplement appeared to be misbranded within the meaning of several sections of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 (1938).[1] The shipment was therefore

---

1. The F.D.A. gave the following reasons for its conclusions as to misbranding:

Misbranded: Within the meaning of Section 403(i) (1) and (2) in that it is a food for which no standard of identity has been promulgated, and its label fails to bear the common or usual name of the food; and the common or usual name of each ingredient (except spices, flavorings, and colorings), contained therein.

Misbranded: Within the meaning of Section 403(j) in that it purports to be or is represented for special dietary uses and its label fails to bear such information as is necessary in order to fully inform purchasers as to its value for such uses.

ordered to be held intact pending final determination by the Agency. That notice also apprised the importer of his "opportunity to appear at the District Office of the Food and Drug Administration . . . to introduce testimony relative to the admissibility of the article or to file a statement in writing, within 5 days following [the date of the notice]."

On November 4, 1970, a hearing was held pursuant to 21 C.F.R. 1.318 during which the appellant apparently was told that the complete quantitative formula and a complete description of the manufacturing processes would have to be submitted along with the Application for Authorization to Relabel as required by 21 C.F.R. 1.319(a). While there is some dispute as to whether the request for the description was made at this time or in December or January, we do not deem the issue to be of importance. At any rate, appellant submitted the application on the day following the hearing, November 5, 1970, but the statement concerning the formula and the manufacturing processes was not presented until January 26, 1971. On the basis of this information, plaintiff was advised by the F.D.A. on February 17 that the article could not be relabeled so as to bring it into compliance with the law within the meaning of 21 U.S.C. § 381, and a Notice of Refusal was issued.

The central factor in the F.D.A.'s determination was its finding that ". . . the Bio-Strath product must be classified as adulterated under Section 402(a) (2) (C)." It determined that the substrate of herbs upon which the yeast was grown was ". . . not generally recognized as safe . . . ." L & M was thereafter informed that a food additive regulation would have to be issued to legalize the use of the product, but, in the meantime, while the importer petitioned for such a regulation

the merchandise would have to be either exported or destroyed.

Obviously the Agency correctly reasoned that if the produce were adulterated no amount of relabeling could bring the product into conformity with the law. We do not believe, however, that the manner by which the F.D.A. arrived at its conclusion that the product was adulterated, or appeared to be adulterated, is justified by a reading of 21 U.S.C. § 381. The statute reads, in pertinent part:

> The Secretary of the Treasury shall deliver to the Secretary of Health, Education, and Welfare, upon his request, samples of food, drugs, devices, and cosmetics which are being imported or offered for import into the United States, giving notice thereof to the owner or consignee, who may appear before the Secretary of Health, Education, and Welfare and have the right to introduce testimony.

That statute is implemented by 21 C.F.R. § 1.318(a) which further clarifies the process of determination envisioned by Congress:

§ 1.318 Hearing.

(a) If it appears that the article may be subject to refusal of admission, the district director shall give the owner or consignee a written notice to that effect, stating the reasons therefor. The notice shall specify a place and a period of time during which the owner or consignee shall have an opportunity to introduce testimony. Upon timely request, giving reasonable grounds therefor, such time and place may be changed. Such testimony shall be confined to matters relevant to the admissibility of the article, and may be introduced orally or in writing.

 Clearly, Section 381 and the regulation implementing that section en-

---

Misbranded: Within the meaning of Section III of the Federal Food, Drug, and Cosmetic Act as provided by the Fair Packaging and Labeling Act under

Section 4(a) (3) (C) as related to 403 (f) in that the Net Weight statement is less than ⅛ inch as required by Reg. 1.8b.

vision some participation by the owner of the product in the decision-making process relating to the product's admissibility. The section enables the owner to be heard and to present evidence bearing upon the issues involved in the administrative decision as to the admissibility of his product. Implicit in "the right to introduce testimony" is the right to know what the issues are that the testimony is to relate to. Thus a reasonable interpretation of the language of Section 381 requires that in the notice prescribed by that section there be included a statement of the grounds upon which the article may be refused admission.[2] The explanation of such an interpretation is too obvious to require extensive elaboration. The right to introduce testimony would indeed be hollow without some knowledge of the issues upon which the testimony is needed. Without such specific knowledge the owner would need to introduce testimony relating to every conceivable objection that there could be to the distribution of the product, or else run the risky course of trying to guess the particulars of the Administration's objections. The statute could never have been intended to impose such a burden on the importer.

▬ Here appellant was notified that its product was subject to refusal of admission because of misbranding. It is disingenuous, however, for the Food and Drug Administration to argue that misbranding was the reason for the Notice of Refusal. It is clear that its refusal to admit the yeast product was predicated on the determination that it was adulterated within the meaning of 21 U.S.C. § 342(a) (2) (C).[3] L & M

was effectively denied the opportunity to be heard or to introduce testimony as to this central issue for it never received a Section 381 notice that adulteration was in question. Therefore, we find that the F.D.A. exceeded its statutory authority when it determined Bio-Strath Elixir to be adulterated without first providing the appellant with the opportunity to be heard on that issue. Whenever administrative action exceeds the authority delegated to it by Congress, it is appropriate for an aggrieved person to obtain judicial relief from the impingement of such excess, see Stark v. Wickard, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733 (1944); Social Security Board v. Nierotko, 327 U.S. 358, 66 S.Ct. 637, 90 L.Ed. 718 (1946); Carl Borchsenius Co. v. Gardner, 282 F.Supp. 396 (E.D.La.1968).

Clearly, therefore, appellant was arbitrarily denied a hearing on the issue of whether the elixir came within existing regulations. However, in view of the evidence in the possession of the F.D.A. it would appear that, at this late date, it would be wiser not to order that the appellant be granted such a hearing for the sole purpose of determining whether Bio-Strath is adulterated. Therefore, we deem it appropriate in this case that such injunctive relief be issued as would permit the detained shipment to remain in the country while appellant proceeds within reasonable time to file, pursuant to 21 U.S.C. § 348, a food additive petition seeking a new regulation relative to its product. Accordingly, we reverse the holding below dismissing plaintiff's complaint, and remand with instructions that such injunctive relief be issued as to permit the detained shipment to remain in the country.

---

2. Such a conclusion is borne out by the wording of 21 C.F.R. § 1.318(a) quoted in the text.

3. § 342(a) (2) (C), in pertinent part, reads:

A food shall be deemed to be adulterated—
 (C) if it is, or if it bears or contains, any food additive which is unsafe within the meaning of section 348 of this title:
 . . .