562 F.2d 1188
 H. Bruce FRANKLIN, Appellant,
v.
Dale M. ATKINS, Robert M. Gilbert, Prof. Byron L. Johnson,
Fred M. Betz, Sr., Eric W. Schmidt, Thomas S. Moon, Jack
Kent Anderson, and Raphael J. Moses, Individually and in
their representative capacities as members of the Board of
Regents of the University of Colorado, Appellees.
 No. 76-1256.
 United States Court of Appeals,
Tenth Circuit.
 Argued and Submitted March 14, 1977.
Decided June 20, 1977.
Rehearing Denied Oct. 25, 1977.
 
 Anthony F. Renzo, American Civil Liberties Union of Colorado, Denver, Colo. (Robert C. Lehnert, Denver, Colo., with him on brief), for appellant.
 Richard A. Tharp, Asst. University Counsel, Boulder, Colo., University of Colo., for appellees.
 David M. Rabban, Counsel, The American Association of University Professors, Washington, D. C., joined by Matthew W. Finkin, School of Law, Southern Methodist University, Dallas, Tex., and William W. Van Alstyne, School of Law, Duke University, Durham, N. C., on brief for amicus curiae.
 Before SETH and BARRETT, Circuit Judges, and KERR, Senior District Judge*.
 SETH, Circuit Judge.
 
 
 1
 The plaintiff was an unsuccessful applicant for a position in the English Department of the University of Colorado. He was rejected by the Regents of the University, and asserts in this section 1983 action for damages, for declaratory and injunctive relief, that the decision was made on constitutionally impermissible grounds.
 
 
 2
 Plaintiff had never held a position at the University of Colorado. As the trial court pointed out, such an applicant is in a somewhat different position as to the sources of available information from a person already employed at the school. There is a greater need to use written evaluations, reports, and letters of recommendation, in addition to the interviews, for outside applicants. This procedure was necessarily followed in handling plaintiff's application. Reports and letters were received, and the Regents apparently received "suggestions" from all directions. This would be expected where elected public officials have before them as a regular part of their duties decisions of this nature. The Regents are not jurors to whom are submitted only those facts purified by filtration through the rules of evidence. Instead, they must do the proper sorting for themselves of the great variety of information. This is the exercise of their duties as public officials, and the result is the official act. This is the only way this part of the machinery of government can work. There must be made a beginning assumption that they were acting in good faith and aware of the constitutional problems. In this day and age, school board members and regents are probably exposed more than any other group to constitutional claims, issues, and arguments in their day-to-day duties. These matters have thus become a part of their regular problem-solving functions. Since they are so exposed to these issues, and receive information, reports, rumors, complaints, and harassment from so many sources, it is understandable that the Supreme Court has held, in substance, that the "consideration" of improper or constitutionally protected conduct does not ipso facto constitute a violation of constitutional rights justifying remedial action. Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471; Bertot v. School District No. 1, 522 F.2d 1171 (10th Cir.). This is the "sorting" that must be done by the board members in the discharge of their duties, and in the sorting they necessarily "consider" a large quantity of information from diverse sources. In Mt. Healthy, the Court accepted the trial court's determination that one of the matters "considered" was protected by the First and Fourteenth Amendments. The standards described in Mt. Healthy will be considered further later in this opinion.
 
 
 3
 It is understandable that the interest of the Regents here centered immediately on the fact that the applicant had been terminated by Stanford University as a tenured faculty member in 1971. This triggered a demand for the facts surrounding the termination described as being the first of that nature in sixty years at that institution. The termination at Stanford followed a hearing conducted by an Advisory Board composed of seven faculty members elected to review appointments and promotions. The Board submitted a Report recommending dismissal of Professor Franklin after concluding he had engaged in improper conduct. The Advisory Board hearing lasted some thirty-eight days, and there were 111 witnesses. The standards applied by the Board are described in the Report. The Report is described in the opinion filed by the trial judge, and need not be further described here (see 409 F.Supp. at 441). This Report is the basic data used by the Regents in this case to determine what was the "conduct at Stanford." The trial court used the same phrase, and again the source of the information basically is the Report.
 
 
 4
 It is apparent that the Regents need give no reason for a refusal to hire, and in fact need have no reason at all. See University of Colorado v. Silverman, 555 P.2d 1155 (D.Colo.), and Colo.Rev.Stats.1973, § 23-20-112. However, it is equally obvious that they could not refuse to hire for a constitutionally impermissible reason.
 
 
 5
 Reference should be made here to Pickering v. Board of Education,391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811, for the balancing which must be made in a decision as to whether there was a protected interest. The Court in Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 574, 50 L.Ed.2d 471, included a quotation from Pickering when it said:
 
 
 6
 "That question of whether speech of a government employee is constitutionally protected expression necessarily entails striking 'a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State as an employer, in promoting the efficiency of the public services it performs through its employees.' Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968)."
 
 
 7
 The trial court made the determination as to the nature of the applicant's acts from the testimony of the defendants, from the Report, the Regent's reliance on it, and reliance on its conclusions. The several situations considered in the Report are well described therein and elsewhere, and a clear picture develops as to the applicant's participation in the several incidents. There appears to be no reason why the Regents should not have put the emphasis they did on the Report. The trial court held it was of such a nature that they could rely on it and we agree. The plaintiff does not assert that the descriptions of the events contained in the Report are in any material respect incorrect. He does dispute the conclusions and inferences.
 
 
 8
 To refer again to the mixture of constitutionally protected conduct with matters not so protected, and the "consideration" of all matters by the Regents, we refer again to the Mt. Healthy decision where the Court referred to the fact that the Board's decision there was between tenure and termination, and said:
 
 
 9
 ". . . The long term consequences of an award of tenure are of great moment both to the employee and to the employer. They are too significant for us to hold that the Board in this case would be precluded, because it considered constitutionally protected conduct in deciding not to rehire Doyle, from attempting to prove to a trier of fact that quite apart from such conduct Doyle's record was such that he would not have been rehired in any event."
 
 
 10
 The Court then moved to the burden standards, and held that the burden was properly placed on the plaintiff ". . . to show that his conduct was constitutionally protected, and that this conduct was a 'substantial factor' or, to put it in other words, that it was a 'motivating factor' in the Board's decision not to rehire him." The second portion of this burden on the plaintiff thus creates a new measure of "substantial" or "motivating factor" in the Board's decision.
 
 
 11
 The Court, having held that per se violations do not result from a "consideration" of protected conduct, and referring to plaintiff's dual burden, said:
 
 
 12
 ". . . Respondent having carried that burden, however, the District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct." (Emphasis supplied).
 
 
 13
 The Court so established a test as to the "sorting" done by the Board; thus, in the absence of the protected conduct as a motivating factor, would the Board have reached the same conclusion? Or, if the protected conduct had been excluded, would the same result have been reached? How is the application of Mt. Healthy to be made to this appeal? The trial court did not have the benefit of the Mt. Healthy opinion as it came down while this appeal was pending, but apparently he did not need it.
 
 
 14
 The burdens placed on a plaintiff under Mt. Healthy City School District Board of Education v. Doyle are substantial, and we must conclude that the plaintiff here failed to meet the burdens. He failed to show that "his conduct" was constitutionally protected, and he failed to show that "this conduct" was a "substantial" or a "motivating" factor in the decision of the Regents not to hire him.
 
 
 15
 Thus the Report of the Faculty Advisory Board at Stanford did not describe conduct which was constitutionally protected under the prevailing standards, nor did the other material submitted, and with the application to it in Colorado of Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811, again as directed in Mt. Healthy. Thus as in Pickering, the comparison is of the interests of the plaintiff here as a citizen in commenting on matters of public concern with the interest of Colorado as a prospective employer "in promoting the efficiency of the public services it performs through its employees." The Regents were entitled, under the circumstances, to rely on the facts detailed in the Report, and to rely on the ultimate discharge of the plaintiff Franklin to whatever extent they considered proper. The Report was not shown to be erroneous as to the constitutional matters. The plaintiff did not demonstrate that the Report as so considered was in whole or in part a description of constitutionally protected conduct, nor was it anything else. As indicated above, the description of the incidents was in some considerable detail in the Report, and otherwise, but did not on balance include what were constitutionally protected rights.
 
 
 16
 As to the second portion of plaintiff's burden, that the constitutionally protected conduct was a "substantial" or "motivating factor" in the Regent's decision, the plaintiff also failed in his proof. Assuming there were "impermissible" factors described in the Report, or otherwise, the plaintiff did not show that these factors were a substantial or motivating factor in the decision not to hire. The trial court, on this point, stated that the plaintiff must show that one or several of the prohibited considerations were "paramount" in the refusal to hire. The trial court held that plaintiff did not meet such a burden. This was a failure of proof, and we must agree with the trial court's evaluation of the testimony. This is equivalent to a failure to meet the Mt. Healthy standard of substantial or motivating factor referred to above.
 
 
 17
 The trial court also moved to an "in any event" position and found as a fact that the vote would have been the same had impermissible matters not been "considered." The trial court held (409 F.Supp. at 452):
 
 
 18
 "Since it is apparent that the outcome of the vote would remain unchanged even ignoring the considerations proscribed by University regulation, it would be futile to grant plaintiff the injunctive relief sought under those regulations."
 
 
 19
 The "considerations proscribed by University regulations" are for all practical purposes those matters which plaintiff asserts to be constitutionally protected. The regulations require that the Regents in faculty appointments be not influenced by ". . . such extrinsic considerations as his political, social, or religious views."
 
 
 20
 All in all, the standards applied by the trial court are perfectly consistent with the subsequent opinion of the Supreme Court in Mt. Healthy.
 
 
 21
 The trial court in the last portion of its opinion considers the danger of disruption factor which was felt by some of the Regents. We agree fully with the analysis of this aspect of the case as made by the trial court.
 
 
 22
 AFFIRMED.
 
 
 
 *
 Of the District of Wyoming, Sitting by Designation