Edsel H. WARD, Petitioner,

v.

The INDUSTRIAL COMMISSION of the State of Colorado (Ex-Officio Unemployment Compensation Commission of Colorado) and the Colorado State Department of Highways, Respondents.

No. 83SC186.

Supreme Court of Colorado,
En Banc.

April 22, 1985.

---

G.E. Shields, Lakewood, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Solicitor Gen., Robert C. Lehnert, Asst. Atty. Gen., Denver, for respondents.

ROVIRA, Justice:

We granted certiorari to review an unpublished decision of the court of appeals, *Ward v. Industrial Commission*, No. 82CA0528 (Colo.App. March 24, 1983), affirming the Industrial Commission of Colorado's reduced award of unemployment benefits to the claimant, Edsel H. Ward. We reverse and remand the cause for further proceedings consistent with this opinion.

I.

Edsel H. Ward was employed as an auditor for three years in the external audit division of the Colorado State Department of Highways (DOH) until February 28, 1978, when he was dismissed. His job was to audit the performance of outside parties awarded DOH contracts. After his dismissal, Ward filed a claim for unemployment benefits which was opposed by the DOH. On April 6, Ward was notified by a deputy in the Department of Labor and Employment that he would be denied benefits for

twelve weeks because of allegedly inflammatory statements he made "defaming the office of the State Auditor, State Personnel Department, and the employees of the State Highway Department." The reduction was based upon Ch. 38, sec. 12, § 8–73–108(6)(b)(VIII), 1976 Colo.Sess. Laws 335, 347.

Ward appealed the deputy's decision. A hearing was then held before a referee for seven and one-half days in early June and the middle of July. In his September 1978 decision, the referee found that the DOH terminated the claimant because he was insubordinate, failed to follow lines of authority, and was generally disruptive and argumentative with management. The referee also considered Ward's argument that he was terminated because he followed a course of revealing questionable actions by the DOH, in short, because he was a "whistle blower." Citing a number of confrontations between the claimant and management more fully discussed below, the referee ruled that Ward was not dismissed because he was a "whistle blower" and that the DOH was justified in dismissing him. Ward was denied six weeks of benefits. Like the deputy, the referee relied upon section 8–73–108(6)(b)(VIII).

Ward appealed to the Commission, which in February 1979 adopted the referee's order after further discussion of the confrontations between the claimant and management. A final order issued on March 28, 1979.

The court of appeals, *Ward v. Industrial Commission*, 44 Colo.App. 301, 612 P.2d 1164 (1980), reversed because section 8–73–108(6)(b)(VIII), relied upon by the referee and the Commission, had been repealed effective October 1, 1977. *See* Ch. 96, sec. 5, § 8–73–108(6), 1977 Colo.Sess.Laws 482, 485. It then remanded the cause to the Commission.

On remand, in its findings of fact and order dated December 2, 1980, the Commission adopted the findings of fact set forth in the referee's decision of September 1978 and the Commission's order of February 1979 as true and correct. It found that the claimant was responsible for his separation and denied him twelve weeks of benefits pursuant to section 8–73–108(5) (reduced awards) in effect at that time. *See* § 8–73–108(5), 3 C.R.S. (1973 & 1980 Supp.). Ward petitioned for review. The Commission issued a final order in April 1982 affirming its prior order.

Ward again appealed seeking reversal on primarily two grounds. First, he asserted that the referee and the Commission had denied him procedural due process. *See* U.S. Const. amend. XIV; Colo.Const.art. II, § 25. Second, he claimed that his constitutional rights to free speech had been denied because the reduction in benefits resulted from confrontations with his employer in which he had allegedly exercised those rights. *See* U.S. Const. amend. I and XIV; Colo. Const. art. II, § 10. In his reply brief, Ward also contended that the DOH's opposition to his unemployment claim violated the policy of Colorado's "whistleblower" statute, §§ 24–50.5–101 to –107, 10 C.R.S. (1982), which protects state employees from disciplinary measures or harassment by their supervisors for the disclosure of information on actions of state agencies that are not in the public interest. In *Ward v. Industrial Commission*, No. 82CA0528 (Colo.App. March 24, 1983), the court of appeals affirmed the Commission's order, finding no denial of procedural due process and rejecting as without merit Ward's claim that the order constitutes an unconstitutional prior restraint on his freedom of speech. The opinion did not address the applicability of the "whistle-blower" statute.

On Ward's petition for certiorari, we granted review on two issues: (1) whether reduction of unemployment compensation to a purported whistle blower is consistent with the statutory purpose of compensating those unemployed through no fault of their own if whistle blowing is statutorily and constitutionally protected conduct, and (2) whether the claimant was denied procedural due process. We address each in turn.

## II.

Before proceeding with Ward's free speech claim, we first review those instances of conflict or confrontation between the claimant and the DOH which the Commission relied upon to reduce benefits. In its February 1979 order, which was later adopted *in toto* on December 2, 1980, the Commission summarized the following six separate instances of confrontation:

1. An Equal Employment Opportunity report had been submitted by the Colorado State Highway Department to the Federal Highway Administration which contained a typographical error. The claimant referred the error to his immediate supervisor, to which the supervisor responded that the error was of no significance and should be disregarded. Not being satisfied with that response, the claimant took it upon himself to refer the error to a higher authority. Such action caused the employer to expend time and effort unnecessarily to finally dispense with the problems caused by the claimant's action.

2. An audit had been made on the Denver Coalition Venture which disclosed some discrepancies that the claimant felt were to be construed as fraud; his concerns were expressed to his supervisors and subsequently a meeting was held regarding the matter. The meeting was attended by the claimant, his supervisors and members of the Attorney General's staff. The claimant recommended that the matter be turned over to the Federal Bureau of Investigation for investigation. The recommendation was overruled by the Attorney General and it was understood that the matter would be turned over to the FHA [Federal Highway Administration] to be investigated by its own investigation section. In spite of the fact that the management had decided the process to be followed for investigation of the suspected discrepancies, the claimant chose to refer the matter to the FBI. This action also ultimately resulted in the department's expending unnecessary time and energy to resolve the problem caused by the claimant.

3. The claimant used his own personal automobile to conduct state business which was contrary to relative departmental rules which he admitted he knew were in existence. This in itself was a direct flaunt to his supervisor. His request for reimbursement for mileage which was obviously not reimbursable under the rules subsequently caused time consuming discussions.

4. The arguments and discussions that ensued over [the] supervisor's exercising his prerogative in determining that the claimant was not entitled to administrative [snow] leave on a stormy day when many state employees failed to report to work, also proved to be costly and time consuming.

5. The claimant's action or inaction in the procuring of a respirator necessary to work safely as deemed by the management is not the expression of cooperation on the claimant's part towards work rules instituted by the management. The Industrial Commission recognizes that it is the responsibility of the employer to furnish its employees a safe place to work and admits the management did not show the enthusiasm that it should have shown by not putting the proper safety equipment in the employee's hands as soon as possible. It also must express its feelings about the claimant's lack of initiative in seeking out the safety person so as to be provided his respirator and the accompanying safety lecture relative to the usage and the possible repercussions for failure to use the equipment.

6. The personnel procedures that the claimant felt were improperly implemented do have procedures for ap-

peal, whether they are just or unjust is not at issue here. At issue is the fact that the person who applies for employment must realize that any employment to which he aspires has work rules that must be adhered to as a condition of employment. The discussions, allegations and contentions as to the improprieties in the implementation of personnel rules went beyond the normal course and led to damage to supervision.

The Commission concluded that all of these actions by the claimant expressed disdain for established work rules and sources of authority and were costly to the state's taxpayers. It also found that the claimant's attitude and allegations brought about poor employer-employee relationships that could ultimately destroy the DOH's effectiveness. The Commission thus found that the responsibility for the separation was placed squarely on the claimant and disqualified him from the receipt of benefits for a period of twelve weeks pursuant to section 8–73–108(5). *See* § 8–73–108(5), 3 C.R.S. (1973 & 1980 Supp.).

### A.

▉ Although we recognize that the General Assembly has conferred discretion on the Commission in determining whether to grant a claimant a reduced award under section 8–73–108(5), *Sims v. Industrial Commission*, 627 P.2d 1107, 1109 (Colo. 1981), this does not mean that the Commission's discretion is limitless. Even where a government employer may discharge an employee for no reason whatsoever, it may not deny a benefit to a person on a basis that infringes his constitutionally protected interests, especially his interest in freedom of speech. If the government could deny a benefit to a person solely because of the exercise of constitutionally protected speech, the exercise of that freedom would in effect be penalized and inhibited. *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972). *See, e.g., Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811

(1968) (nonrenewal of nontenured public school teacher's contract may not be predicated on his exercise of first and fourteenth amendment rights); *Franklin v. Atkins*, 409 F.Supp. 439 (D.Colo.1976), *aff'd*, 562 F.2d 1188 (10th Cir.1977), *cert. denied*, 435 U.S. 994, 98 S.Ct. 1645, 56 L.Ed.2d 83 (1978) (same); *Hadley v. Moffat County School District RE–1*, 681 P.2d 938 (Colo. 1984) (same); *Johnson v. Jefferson County Board of Health*, 662 P.2d 463 (Colo.1983) (resignation of county's public health officer after threat of dismissal); *Vigoda v. Denver Urban Renewal Authority*, 646 P.2d 900 (Colo.1982) (authority's refusal to negotiate after acceptance and execution of formal offer to negotiate); *Durango School District No. 9–R v. Thorpe*, 200 Colo. 268, 614 P.2d 880 (1980) (nonrenewal of nontenured public school teacher's contract). This principle applies with equal force where unemployment benefits are reduced on the basis of constitutionally protected activity which the claimant contends here.

That claim is governed by *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), where the United States Supreme Court developed a three-part test in determining whether the termination of a government employee constitutes an unlawful retaliation for the exercise of free speech rights. In *Mt. Healthy*, the Court held that: (a) a plaintiff in the claimant's position has the burden to show by a preponderance of evidence that his activities fall within the protection of the constitutional guarantee of freedom of speech, (b) that these activities were a "substantial" or "motivating" factor in the decision to terminate his employment, and (c) if the plaintiff makes the initial showing, the employer may avoid liability by demonstrating by a preponderance of the evidence that it would have reached the same decision as to the plaintiff's reemployment even in the absence of the protected conduct. 429 U.S. at 287, 97 S.Ct. at 576. We note, however, that the focus here is whether constitutionally protected

activity has been used by a state employer to justify a reduction of unemployment benefits.

■ Although the Commission expressly recognized that the claimant's free speech rights were at issue, its findings do not reflect application of the *Mt. Healthy* test in resolving whether his activities could be relied upon to reduce his unemployment benefits. The judgment must therefore be reversed and the cause remanded to the Commission for further findings. To illustrate the factors of *Mt. Healthy* which the Commission should consider upon remand, we will examine the confrontation arising out of the Denver Coalition Venture (DCV) audit which was listed in the Commission's findings.

### 1.

■ The first question the Commission should address on remand is whether the claimant's disclosure of possible discrepancies in the DCV audit to the FBI, after it was decided that the matter was to be turned over to the Federal Highway Administration's investigation section, was a form of constitutionally protected expression. The evidence introduced by the claimant must show by a preponderance that it was. The constitutional protection of such expression depends upon striking a balance between the claimant's interest in commenting upon matters of public concern and the government's interest in maintaining efficiency in the delivery of services. *See Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). The balance may be struck in favor of the government when it is demonstrated that the expressions undermine the effectiveness of the working relationship or substantially or materially affect such governmental interests as employee competency, administrative efficiency, or co-worker harmony. *See Pickering,* 391 U.S. at 570 n. 3, 88 S.Ct. at 1735 n. 3. *See also Durango School District No. 9–R v. Thorpe,* 200 Colo. 268, 275, 614 P.2d 880, 886 (1980) (no showing was made that the teacher's speech had engendered the sort of disharmony among co-workers which would remove it from constitutional protection). Here, the Commission found that the claimant's action in the DCV audit resulted in the expenditure of unnecessary time and energy to resolve the problem and added to poor employee-employer relationships. However, the government has no interest in preventing the sort of disharmony which inevitably results from the expression of controversial ideas. *Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); *Los Angeles Teachers Union v. Los Angeles City Board of Education,* 71 Cal.2d 551, 455 P.2d 827, 78 Cal.Rptr. 723 (1969). Where an employee like Ward purportedly blows the whistle on his superiors for misconduct, some delay and animosity is expected. The question is the degree. The Commission's findings do not adequately distinguish between disharmony which may inevitably result and that which removes expression from constitutional protection. The Commission's findings are further tempered in this regard by its other finding that Ward's performance had been acceptable.

On the other hand, the Commission should also consider

the public importance of the subject matter of the speech, whether the employee's knowledge and expertise are such as to render his statements of particular value to public debate, the extent to which a retaliatory dismissal might result in a severe limitation of public access to vital information, and whether any transitory detriment to the operations of the government agency would likely be outweighed by the long-term enhancement of agency goals which may result from a public airing of the employee's concerns.

*Johnson v. Jefferson County Board of Health,* 662 P.2d 463, 475 (Colo.1983) (footnote omitted). *See also Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979) (private expression of public employee is constitutionally protected). The po-

tential public importance of Ward's DCV audit disclosure to the FBI was heightened by the fact that the audit revealed possible waste of taxpayer money. Ward's contention that the matter may have received greater attention by an independent FBI investigation rather than by the Federal Highway Administration may also have heightened the importance of the disclosure. Ward's expertise also rendered his statements of particular value to public debate. Thus, a retaliatory dismissal or reduction of benefits for his DCV disclosure may have limited the public's access to this information. Moreover, the embarrassment to the DOH by disclosure of possible mismanagement of funds might be outweighed by the long-term enhancement of its goals in delivering transportation services to the public because of the availability of more funds. After thorough consideration of both the claimant's and the government's interests, the Commission must determine whether the DCV disclosure was constitutionally protected.

### 2.

If the Commission finds that the DCV disclosure or other incidents were constitutionally protected, the second question which it must examine under *Mt. Healthy* is whether there was a causal connection between these activities and the DOH's decision to seek a reduction in the claimant's unemployment benefits. 429 U.S. at 287, 97 S.Ct. at 576. The claimant's evidence must establish, by a preponderance of the evidence, that such activities were a substantial or motivating factor. The claimant's case is aided in this regard by the fact that the DOH expressly relied upon those incidents cited by the Commission in opposing his receipt of benefits. However, the Commission must make the initial determination of whether the claimant's constitutionally protected conduct was a substantial or motivating factor in the DOH's opposition to the claimant's receipt of benefits.

### 3.

If the evidence establishes that one or more of the acts cited by the Commission involve constitutionally protected conduct and such acts were a substantial or motivating factor in the DOH's decision to contest Ward's receipt of unemployment benefits, then the Commission must consider whether the DOH established, by a preponderance of the evidence, that the same decision would have been reached even in the absence of constitutionally protected conduct. As stated in *Mt. Healthy*,

> [t]he constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the conduct. A borderline or marginal candidate should not have the employment question resolved against him because of constitutionally protected conduct. But that same candidate ought not to be able, by engaging in such conduct, to prevent his employer from assessing his performance record and reaching a decision not to rehire on the basis of that record, simply because the protected conduct makes the employer more certain of the correctness of its decision.

429 U.S. at 285–86, 97 S.Ct. at 575–76.

### B.

In addition to this constitutional inquiry, the Commission must also determine whether these instances of confrontation relied upon by the DOH in its opposition to Ward's application for benefits, were protected by Colorado's "whistle-blower" statute. *See* §§ 24–50.5–101 to –107, 10 C.R.S. (1982). That statute protects state employees from retaliation by their appointing authorities or supervisors because of disclosure of information about state agencies' actions which are not in the public interest. The purpose behind such protection is in the legislative declaration which states:

> The general assembly hereby declares that the people of Colorado are entitled to information about the workings of state government in order to reduce the waste and mismanagement of public funds, to reduce the waste and mismanagement of public funds, to reduce abuses in government authority, and to pre-

vent illegal and unethical practices. The general assembly further declares that employees of the state of Colorado are citizens first and have a right and a responsibility to behave as good citizens in our common efforts to provide sound management of governmental affairs. To help achieve these objectives, the general assembly declares that state employees should be encouraged to disclose information on actions of state agencies that are not in the public interest and that legislation is needed to ensure that any employee making such disclosures shall not be subject to disciplinary measures or harassment by any public official.

§ 24–50.5–101, 10 C.R.S. (1982).

Accordingly, appointing authorities and supervisors are prohibited from initiating or administering "any disciplinary action against an employee on account of the employee's disclosure of information." § 24–50.5–103(1), 10 C.R.S. (1982). Disciplinary actions are defined as "any direct or indirect form of discipline or penalty, including, but not limited to, dismissal, demotion, transfer, reassignment, suspension, corrective action, reprimand, admonishment, unsatisfactory or below standard performance evaluation, reduction in force, or withholding of work, or any threat of such discipline or penalty." § 24–50.5–102(1), 10 C.R.S. (1982). Disciplinary actions would necessarily include an agency's opposition to a terminated employee's receipt of unemployment benefits.

■ However, such protection is not absolute. Before a whistle blower discloses information, he must make "a good faith effort to provide his supervisor or appointing authority or member of the general assembly the information." § 24–50.5–103(2), 10 C.R.S. (1982). Even after the whistle blower makes this good faith effort, only certain kinds of disclosures are protected. The disclosure of information must be "regarding any action, policy regulation, practice, or procedure, including, but not limited to, the waste of public funds, abuse of authority, or mismanagement of

any state agency." § 24–50.5–102(2), 10 C.R.S. (1982). Despite language in the statute limiting such disclosures to "the written provision of evidence to any person, or the testimony before any committee of the general assembly," *id.*, we believe that the legislature did not intend to exclude oral or verbal disclosures from protection. Protection should not depend upon the means or method of disclosure.

Although the whistle blower is thus protected from disciplinary action for many disclosures, no protection is provided in three circumstances. The statute does not protect:

(a) An employee who discloses information that he knows to be false or who discloses information with disregard for the truth or falsity therein;

(b) An employee who discloses information from public records which are closed to public inspection pursuant to section 24–72–204.

(c) An employee who discloses information which is confidential under any other provision of law.

§ 24–50.5–103(1)(a)–(c), 10 C.R.S. (1982).

We are aware that Colorado's "whistle-blower" statute was not raised by the claimant in the proceedings before the Commission and was only formally argued for the first time in the claimant's reply brief on his second appeal to the court of appeals. Still, the statute was in effect at the time the Commission issued its second set of findings and orders on December 2, 1980, reducing the claimant's benefits. *See* Ch. 250, sec. 1, §§ 24–50.5–101 to –107, 1979 Colo.Sess.Laws 965, 965–67. The DOH's continued opposition to the receipt of those benefits at that time would also constitute disciplinary action as contemplated by the statute. Because we have remanded the cause to the Commission to examine the constitutional claims discussed earlier, we see no great burden in directing it to examine the applicability of the "whistle-blower" statute as well.

■ As with Ward's claims of free speech violations, the Commission's exami-

nation of possible whistle-blower violations should employ the same allocation of the burden of proof found in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). It must be initially determined whether the claimant's disclosures fell within the protection of the "whistle-blower" statute and that they were a substantial or motivating factor in the DOH's opposition to his receipt of benefits. If the claimant's evidence establishes that his expression was protected by the "whistle-blower" statute, then the Commission must determine whether the DOH's evidence establishes, by a preponderance of the evidence, that it would have reached the same decision even in the absence of protected conduct. We find such allocation to be reasonable in this context. *See, e.g., NLRB v. Transportation Management Corp.*, 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983) (NLRB's similar allocation of burden of proof where employee alleges discharge because of union activities protected by National Labor Relations Act considered reasonable).

## II.

We now turn to Ward's contention that he was denied due process of law because of inadequate notice, failure to provide him a bill of particulars, and exclusion of evidence. *See* U.S. Const. amend. XIV; Colo. Const. art. II, § 25. Although the Commission may find in the claimant's favor on his free speech and whistle-blower claims, thus rendering his due process claims moot, we choose to resolve those due process claims before us.

## A.

■ Ward first asserts that he did not receive proper notice and was erroneously denied a bill of particulars of the issues to be considered at the hearing before the referee. In his *pro se* notice of appeal from the deputy's decision, the claimant had requested that he be furnished a bill of particulars outlining the DOH's reasons for his termination and opposition to his receipt

of benefits so he could prepare his defense. Since no bill of particulars was furnished, Ward's attorney asked at the beginning of the hearing that the DOH be limited to using those instances of misconduct relied upon by the deputy to reduce benefits; namely, Ward's allegedly defamatory statements of state employees and offices. He argued that those were the only issues of which Ward had been put on notice as far as the reduction of benefits and to proceed on other issues would force Ward to be "shooting in the dark." The referee refused to so limit the issues and ruled that Ward had been put on notice of the issues pertaining to his separation from employment.

The court of appeals, in the second appeal, found that the introduction of evidence before the referee not considered by the deputy did not deprive the claimant of any due process right because an administrative appeal in an unemployment compensation case is, in effect, a trial *de novo*, which enables the referee to examine all matters at issue regardless of the ground or basis of appeal. *Anderson v. Industrial Commission*, 29 Colo.App. 263, 482 P.2d 403 (1971). It also found that the claimant was sufficiently informed of the reasons for his discharge in his termination letter dated February 24, 1978, and was thus "fully apprised of the evidence to be considered." *Nesbit v. Industrial Commission*, 43 Colo.App. 398, 607 P.2d 1024 (1979). The claimant argues here that this letter only informed him of one of the reasons for termination relied upon by the DOH at the hearing. We disagree.

Among the reasons mentioned in the letter, and later found to be grounds for reduced benefits, were direct references to the disputes concerning the Equal Employment Opportunity report, administrative snow leave, departmental rules for use of personal autos, and the proper application of personnel procedures where the claimant had applied for an accountant V position. The letter did not directly refer to the DCV audit dispute or the respirator incident.

However, the claimant's due process rights were not infringed because the record discloses that he was not prejudiced by the notice or lack of bill of particulars to which he objects. *Ricci v. Davis*, 627 P.2d 1111, 1122 (Colo.1981). Before the hearing began in June 1978, the claimant's attorney submitted a letter to the referee dated May 25, 1978, which summarized the witnesses the claimant expected to call and a general description of the areas to be covered. The areas mentioned included alleged irregular and illegal activities by the DOH, administrative snow leave, use of personal autos or the state's motor pool, and possible improper personnel procedure surrounding the claimant's application for an accountant V position. This is not a case where the claimant was effectively denied the opportunity to be heard on the central issues concerning his termination. *See, e.g., L & M Industries Inc. v. Kenter*, 458 F.2d 968 (2d Cir.1972); *Bendix Corp. v. FTC*, 450 F.2d 534 (6th Cir.1971); *Jaffee & Co. v. SEC*, 446 F.2d 387 (2d Cir.1971). *But see, e.g.*, *NLRB v. Mackay Radio & Telegraph Co.*, 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381 (1938); *Golden Grain Macaroni v. FTC*, 472 F.2d 882 (9th Cir.1972), *cert. denied*, 412 U.S. 918, 93 S.Ct. 2730, 37 L.Ed.2d 144 (1973) (no due process violation if party proceeded against understood the issue and was afforded full opportunity to justify conduct). Here, the claimant not only was advised of the issues of separation to be determined at the hearing, but was also afforded full opportunity to rebut the employer's reasons for termination. Due to the nature of the hearing, the referee had required the employer to present its case first, to substantiate the reasons for termination. The hearing, which lasted a total of seven and one-half days, was held in 1978 from June 5 to June 7, July 14 and 15, and was concluded on July 17 and 18. Thus, when the claimant essentially presented his case-in-chief on July 17 and 18, he was apprised of the reasons for termination relied upon by the employer and had ample opportunity to present his case.

**B.**

Ward also claims that the referee denied his right to due process by excluding evidence through the process of limiting the scope of cross-examination. For example, Ward argues that the referee prevented him from establishing his whistle-blower defense by not allowing him to cross-examine a supervisor about four separate instances of alleged management misconduct which the claimant had questioned. The referee noted that the employer was not relying on those four instances to substantiate its reasons for termination and then properly ruled that the claimant could introduce those instances of alleged mismanagement to establish his defense during his case-in-chief. We have examined all of the referee's other rulings on cross-examination cited by the claimant and find no deprivation of due process here. Only where the restriction is severe enough to constitute a denial of the right will limitation of cross-examination in an administrative hearing be overturned as an abuse of discretion. *Denver Symphony Association v. Industrial Commission*, 34 Colo. App. 343, 526 P.2d 685 (1974). Therefore, we affirm that part of the court of appeals' opinion finding no due process violations.

Accordingly, we reverse and remand to the court of appeals with directions to remand to the Industrial Commission for further proceedings consistent with this opinion.

DUBOFSKY and KIRSHBAUM, JJ., do not participate.