777 P.2d 704 (1989)
COLORADO DIVISION OF EMPLOYMENT AND TRAINING and Industrial Claims Appeals Office, Petitioners, and
Longmont Bakery Company, Inc., Employer,
v.
Sharon K. HEWLETT, Respondent.
No. 88SC86.
Supreme Court of Colorado, En Banc.
July 24, 1989.
*705 Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Curt P. Kriksciun, Asst. Atty. Gen., Denver, for petitioners.
William E. Benjamin, Boulder, for respondent.
MULLARKEY, Justice.
We granted certiorari to review Hewlett v. Colorado Division of Employment and Training, 753 P.2d 791 (Colo.Ct.App.1987), in which the court of appeals set aside the order of the Industrial Claims Appeals Panel denying unemployment benefits to a claimant who asserted that she left her job because of on-the-job harassment. We conclude the court of appeals erred when it reversed the administrative decision and directed that the test in Ward v. Industrial Commission, 699 P.2d 960 (Colo.1985), be applied to determine whether the claimant was entitled to receive unemployment benefits. We reverse and remand the case to the court of appeals for further proceedings consistent with this opinion.

I.
On August 24, 1986, Sharon Hewlett resigned her employment with the Longmont Bakery and subsequently filed a claim for unemployment benefits with the Colorado Division of Employment and Training (division).[1] The claim was denied by a deputy of the division pursuant to section 8-73-108(5)(e)(XXII), 3B C.R.S. (1986), on the basis that Hewlett had left her employment for personal reasons.
Pursuant to section 8-74-103, 3B C.R.S. (1986), Hewlett appealed the decision of the deputy and a hearing was held.[2] The evidence *706 indicates that both Hewlett and her husband were employed by the Longmont Bakery; she worked in the production unit and he was the sales supervisor. Hewlett had been employed for approximately two years when she resigned on the day after her husband was terminated from his position. Hewlett contended that she resigned because of harassment by her supervisor and co-employees. The harassment took the form of written and oral comments about other female employees working with Hewlett's husband. These comments, which suggested improper relationships between her husband and the female employees, continued over the course of approximately one year despite Hewlett's complaints to management. Hewlett testified that she would have left her job earlier, but that she tolerated the harassment because she believed that, if she resigned, her husband's position would be threatened.
The referee found that even though Hewlett was subjected to harassment not related to job performance, she tolerated the harassment for over a year and would have acquiesced to the harassment as long as her husband's employment continued. The referee ruled that Hewlett's separation from employment was caused by her husband's termination and not by the alleged harassment. Thus, the referee concluded that Hewlett resigned for personal reasons and was subject to the maximum reduction of benefits under section 8-73-108(5)(e)(XXII).
Hewlett appealed to the Industrial Claims Appeals Panel (panel), contending that she was entitled to a full award of benefits under section 8-73-108(4), 3B C.R.S. (1986) because her resignation was caused by personal harassment not related to job performance. The panel affirmed the referee's decision. It reasoned that, although Hewlett was harassed and did not acquiesce in the harassment, the direct and proximate cause of Hewlett's separation was her husband's termination from the bakery. Hence, the panel found that she resigned for personal reasons and was disqualified from receiving benefits.
Hewlett appealed the decision of the panel to the court of appeals pursuant to section 8-74-107, 3B C.R.S. (1986), claiming that the findings and conclusions of the panel were not supported by the evidence. The court did not address the substantial evidence issue but held that the referee and panel failed to apply the appropriate standard in evaluating the evidence presented at the hearing. The court stated:
The public policy of the state of Colorado generally prohibits employment discrimination based upon sex. See § 24-34-402, C.R.S. (1982 Repl.Vol. 10). Federal policy contains similar prohibitions. See 42 U.S.C. § 2000e-2; 29 C.F.R. 1604.11(a) (1987); Meritor Savings Bank v. Vinson, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Moreover, the provisions of § 8-73-108(4)(o), C.R.S. (1986 Repl.Vol. 3B) discloses a public policy to assure that the work place is to remain free of "personal harassment by the employer not related to the performance of the job." While the improper conduct here did not take the stereotypical form of sexual harassment, it was based upon claimant's gender and marital status and, thus, arguably contravened public policy.
Hewlett, 753 P.2d at 792. The court then rephrased the issue as whether Hewlett's job separation resulted from the employer's violation of public policy or her personal choice. Id. The court of appeals concluded that "where such a `dual motive' issue is presented, the burden of proof between the parties must be allocated, and the evidence must be considered, in the manner described in Ward v. Industrial Commission, 699 P.2d 960 (Colo.1984)." Id.

II.

A.
Several general principles are relevant to our analysis of this case. Foremost among these principles is our recognition that the Colorado Employment Security Act, section 8-70-101 to 8-82-105, 3B C.R.S. (1986), was designed to lighten the burden of unemployment on those who are involuntarily unemployed through no fault of their own. Under the law, unemployment *707 benefits must be granted to an employee unless the job separation was due to one or more statutorily enumerated causes. Colorado Springs v. Industrial Comm'n, 749 P.2d 412, 414 (Colo.1988); Salida School Dist. R-32-J v. Morrison, 732 P.2d 1160 (Colo.1987). The Act is to be liberally construed to further its remedial and beneficent purposes. Harding v. Industrial Comm'n, 183 Colo. 52, 59, 515 P.2d 95, 98 (1973); Andersen v. Industrial Comm'n, 167 Colo. 281, 284, 447 P.2d 221, 223 (1968). We also emphasize that the unemployment law is intended to provide a speedy determination of eligibility through a simplified administrative procedure. See Salida School Dist., 732 P.2d at 1165 (hearing designed to adjudicate promptly narrow issue of law and to grant a limited remedy to unemployed worker). Claimants and employers frequently appear pro se before adjudicators who need not be attorneys. "The matter in controversy is small and the legal issues are limited, and consequently, the hearings are often informal." Id. at 1164.
Procedurally, the claimant has the initial burden of proof to establish a prima facie case of eligibility for benefits. City & County of Denver v. Industrial Comm'n, 756 P.2d 373, 380 (1988); Duenas-Rodriguez v. Industrial Comm'n, 199 Colo. 95, 97, 606 P.2d 437, 438 (1980); Bartholomay v. Industrial Comm'n, 642 P.2d 50 (Colo.Ct.App.1982). If the initial burden of the claimant is met, the burden shifts to the employer to establish the statutory disqualification for benefits. City & County of Denver, 756 P.2d at 380; City of Arvada v. Industrial Comm'n, 701 P.2d 623, 624 (Colo.Ct.App.1985). A decision of the panel may not be set aside where there are findings of fact supported by substantial evidence. Gonzales v. Industrial Comm'n, 740 P.2d 999, 1001 (Colo.1987).

B.
With this background, we turn to the issue before us. Both parties argue that Ward does not apply to this case. We agree.
The Ward analysis applies when an unemployment claimant contends that her separation from government employment resulted from her assertion of a constitutionally protected right, e.g., her first amendment right of free speech. In such a case, the three factor test of Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), is used to determine whether the claimant is entitled to unemployment benefits. Ward, 699 P.2d at 964-65. The Mt. Healthy test requires a plaintiff to prove by a preponderance of the evidence that her conduct which led to her employment discharge was constitutionally protected and that the conduct was a "substantial" or "motivating" factor in the decision to terminate her employment. If the plaintiff carries that burden of proof, the employer must show that it would have reached the same decision in the absence of the protected conduct. Mt. Healthy, 429 U.S. at 287, 97 S.Ct. at 576. The Mt. Healthy test was followed in Ward because the claimant was a state employee and the focus of the case was "whether constitutionally protected activity has been used by a state employer to justify a reduction of unemployment benefits." Ward, 699 P.2d at 964-65.
In the case now before us, Ward is not relevant. Hewlett was not a government employee, Longmont Bakery is not a government employer and Hewlett does not contend that she was compelled to leave her employment because she engaged in constitutionally protected conduct.
The court of appeals found it necessary to apply the Mt. Healthy test adopted in Ward because public policy prohibits gender-based harassment in employment and because Hewlett had mixed motives for her resignation. In our view, the court of appeals erred when it extended the Ward analysis to this case because the statute itself addresses the issues. An employee who quits her job because of personal harassment is entitled to receive unemployment benefits by the express terms of section 8-73-108(4), which states:

*708 An individual separated from a job shall be given a full award of benefits if any of the following reasons and pertinent conditions related thereto are determined by the division to have existed. The determination of whether or not separation from employment shall result in a full award of benefits shall be the responsibility of the division. The following reasons shall be considered along with any other factors which may be pertinent to such determination:
....
(o) Quitting employment because of personal harassment not related to the performance of the job.
Gender-based harassment is encompassed within the more general term "personal harassment" and a claimant who carries her burden of proving that she quit her job because of personal harassment will receive unemployment benefits.
A claimant is not disqualified for benefits under section 8-73-108(5)(e)(XXII) (quitting for personal reasons) if she is otherwise eligible for benefits under one of the provisions of section 8-73-108. Section 8-73-108(5)(e) states:
[I]f a separation from employment occurs for any of the following reasons, the employer from whom such separation occurred shall not be charged for benefits which are attributable to such employment and, because any payment of benefits which are attributable to such employment out of the fund as defined in section 8-70-103(13) shall be deemed to have an adverse effect on such employer's account in such fund, no payment of such benefits shall be made from such fund:
....
(XXII) Quitting under conditions involving personal reasons which do not, under other provisions of this section, provide for an award of benefits.
Thus, an employee who proves that she quit her job because of personal harassment is not disqualified under section 8-73-108(5)(e)(XXII) because personal harassment is a statutory ground for the award of benefits. Personal harassment need not be the sole factor in her decision to quit because section 8-73-108(5)(e)(XXII) is a residuary provision requiring disqualification only if no other provision permits an award.
The Minnesota Court of Appeals reached the same conclusion in Dura Supreme v. Kienholz, 381 N.W.2d 92 (Minn.App.1986), where an unemployment claimant resigned her job after being sexually harassed and the employer asserted that her resignation was motivated by her dissatisfaction with the postponement of the Christmas party and lack of cost-of-living increases. The court awarded benefits to the claimant, stating that sexual harassment attributable to the employer need not be the sole reason for termination. Id. at 96. See also Curry v. Gatson, 376 S.E.2d 166, 169 (W.Va.1988) ("[I]f an employee is sexually or racially harassed at the workplace and this discriminatory treatment would cause a reasonably prudent person to resign, such employee is not disqualified from receiving unemployment compensation benefits upon resignation....").
Because of its disposition of the case, the court of appeals did not address the question of whether substantial evidence supported the panel's decision. Accordingly, we reverse the court of appeals' decision and remand the case to that court with directions to decide that issue.
NOTES
[1] Section 8-73-102, 3B C.R.S. (1986) provides a deputy designated by the director of the division will review the claim of a party along with pertinent information submitted by the employer and issue a decision. The decision will set forth findings of fact, conclusions of law and an order.
[2] Section 8-73-103 provides in relevant part:

(1) Any interested party who is dissatisfied with a deputy's decision may appeal that decision and obtain a hearing covering any issue relevant to the disputed claim. The issue of a claimant's availability will be relevant to the extent set forth in section 8-73-107(1)(c)(I)(A).
....
(3) The hearing officer, after affording all interested parties a reasonable opportunity for a fair hearing in conformity with the provisions of this article and the regulations of the division, shall make a decision on each relevant issue raised, including findings of fact, conclusions of law, and an order.