Lowell O. FERREL, Plaintiff–Appellant,

v.

COLORADO DEPARTMENT OF COR-
RECTIONS, Colorado State Personnel
Board, and Delores Montoya, Defen-
dants–Appellees.

No. 05CA2303.

Colorado Court of Appeals,
Div. I.

June 1, 2007.

Rehearing Denied July 19, 2007.

Certiorari Dismissed Oct. 5, 2007.

Furman, Kerns & Bauer, LLC, Steven M. Furman, Fort Morgan, Colorado, for Plaintiff–Appellant.

John W. Suthers, Attorney General, Stephanie L. Scoville, Assistant Attorney General, Denver, Colorado, for Defendants–Appellees Colorado Department of Corrections and Delores Montoya.

John W. Suthers, Attorney General, Pamela C. Sanchez, Assistant Attorney General, Denver, Colorado, for Defendant–Appellee Colorado State Personnel Board.

Opinion by Judge FURMAN.

Plaintiff, Lowell O. Ferrel, appeals the trial court judgment dismissing various claims against defendants, Colorado Department of Corrections (DOC), the Colorado State Personnel Board (Board), and Delores Montoya, for lack of subject matter jurisdiction under C.R.C.P. 12(b)(1). Ferrel's main contentions concern the procedure for, and substance of, the trial court's determination of subject matter jurisdiction in a whistleblower act case when the defendants claim immunity under the Colorado Governmental Immunity Act (CGIA), § 24–10–101, et seq., C.R.S.2006 (CGIA). We affirm and remand for awards of attorney fees.

## I. Background

Dr. Ferrel, a licensed psychologist, was hired in 1999 as the mental health coordinator at the Sterling Correctional Facility. Ferrel was a probationary employee when he suffered a demotion in title and responsibilities in early 2000. At the time of the demotion, he was supervised by the clinical team leader, Delores Montoya, and by the chief of mental health.

Ferrel petitioned the Board for a hearing to review DOC's imposition of a disciplinary demotion during the probationary period. Ferrel claimed his demotion was an improper retaliation for his disclosures of information covered by the whistleblower statute, § 24–50.5–101, et seq., C.R.S.2006. He attached to his complaint a memorandum and a letter he had provided to the chief of mental health.

The memorandum concerned a meeting Ferrel had had with the warden and Montoya about (1) Ferrel's need to spend more time with inmates; (2) the warden's erroneous statement about the chain of command; (3) the transfer of a disruptive inmate who Ferrel clinically determined was not in a mental health crisis; (4) Ferrel's statements to others that Montoya was intimidated by the warden; (5) Ferrel's perception that the warden had a temper; (6) Ferrel's expressions of anger toward coworkers, particularly the nursing supervisor; and (7) the warden's

expectation that Ferrel get along with his co-workers.

The letter reported Ferrel's (1) serious personal issues, which Ferrel said was caused by harassment from Montoya, the warden, and the nursing supervisor; (2) feelings of being depressed, anxious, and hopeless about his job situation; (3) request for an Inspector General investigation into the conduct of Montoya, the warden, and the nursing supervisor; and (4) overall perception of workplace harassment.

The administrative law judge (ALJ) issued a dismissal order without a hearing, finding that the documents did not constitute a "disclosure of information" under the whistleblower statute. *See* § 24–50.5–102(2), C.R.S. 2006. The Board affirmed the ALJ's decision.

A division of this court reversed the decision of the Board and remanded the case for further proceedings, including a hearing on the complaint. That division concluded the complaint, on its face, "alleged a violation of law and that the action was taken for reasons other than those allowed by law" and the memorandum and letter constituted "disclosures of information within the contemplation of the whistleblower statute." *Ferrel v. Dep't of Corr.*, (Colo.App. No. 00CA1315, Nov. 15, 2001) (not published pursuant to C.A.R. 35(f) ) (*Ferrel I* ).

On remand, the Board undertook the investigation required by the applicable version of the whistleblower statute and produced an investigatory report, concluding that defendants did not retaliate against Ferrel for whistleblower activity.

Ferrel subsequently filed this suit against defendants in the trial court for reinstatement of his position and back pay, alleging, among other grounds, that he was wrongfully disciplined in retaliation for protected disclosures under the whistleblower statute.

Defendants moved to dismiss Ferrel's claims for lack of subject matter jurisdiction under C.R.C.P. 12(b)(1), asserting the CGIA barred the claims. The trial court held an evidentiary hearing under *Trinity Broadcasting of Denver, Inc. v. City of Westminster*, 848 P.2d 916, 925 (Colo.1993), and grant-

ed defendants' motion. In a detailed and well-reasoned order, the court concluded that neither the memorandum nor the letter constituted "disclosure[s] of information" protected under the whistleblower statute because they did not touch upon matters of "public concern." This appeal followed.

## II. Whistleblower Claims

Ferrel contends the trial court erred in holding a *Trinity* hearing and concluding that his documents were not "disclosures of information" protected under the whistleblower statute. We disagree.

### A. *Trinity* Hearing

The central dispute between the parties on appeal concerns the extent to which the whistleblower statute's implied waiver of immunity should be treated like other waivers of immunity under the CGIA. *See* § 24–10–106, C.R.S.2006. This dispute arises because whistleblower act claims have been described as "tort" claims. *See, e.g., State Pers. Bd. v. Lloyd*, 752 P.2d 559, 563 (Colo.1988); *Conners v. City of Colorado Springs*, 962 P.2d 294, 299 (Colo.App.1997), *aff'd*, 993 P.2d 1167 (Colo.2000). The CGIA explicitly prohibits all tort claims against public entities other than torts for which the General Assembly has waived sovereign immunity. *See* § 24–10–105(1), C.R.S.2006 ("[n]o public entity shall be liable" for actions which lie in tort or could lie in tort "except as provided in this article"). But the CGIA does not include whistleblower act claims as one of the enumerated torts. Accordingly, this case calls for us to construe the implied statutory waiver of immunity in light of the CGIA. Statutory interpretation is a question of law that we review de novo. *Tidwell v. City & County of Denver*, 83 P.3d 75, 81 (Colo.2003).

### 1. Implied Immunity

◼ Ferrel contends the trial court erred in requiring him to prove at a *Trinity* hearing that the memorandum and letter constituted a "disclosure of information." Ferrel contends this was a matter to be determined at trial. We disagree.

■ Whether a claim falls within an exception to the CGIA's waiver of sovereign immunity is a question of subject matter jurisdiction and, if raised before trial, is addressed under C.R.C.P. 12(b)(1). *Henry–Hobbs v. City of Longmont*, 26 P.3d 533, 535 (Colo.App.2001), *aff'd*, 50 P.3d 906 (Colo. 2002). Under C.R.C.P. 12(b)(1), the plaintiff has the burden to prove subject matter jurisdiction. *Trinity, supra*, 848 P.2d at 925; *Henry–Hobbs v. City of Longmont, supra*, 26 P.3d at 535.

■ Any factual dispute upon which the existence of jurisdiction may turn is for the trial court, not the jury, to determine. *Henry–Hobbs v. City of Longmont, supra*. The supreme court explained, "Such a required pre-trial decision permits the court to decide early whether the case is a dispute between private parties or one which involves the government. In this way, in some cases, the government is spared unneeded litigation expense." *Gallagher v. Bd. of Trs.*, 54 P.3d 386, 395 (Colo.2002).

The parties agree the whistleblower statute implicitly waives sovereign immunity under the CGIA in an action for retaliatory discipline resulting from the "disclosure of information." *See State Pers. Bd. v. Lloyd, supra*, 752 P.2d at 563 (describing whistleblower claims as "tort" claims subject to provisions of the CGIA). Ferrel contends, however, that because the whistleblower statute waives sovereign immunity there is no need for a pretrial evidentiary hearing. We disagree.

■ As *Trinity* and its progeny demonstrate, a trial court may not abdicate its responsibility to determine that an action falls within a waived area of sovereign immunity. *See Gallagher v. Bd. of Trs., supra*, 54 P.3d at 395 (reaffirming the holding in *Trinity* that trial court properly decided the question of scope of employment on a C.R.C.P. 12(b)(1) motion to dismiss); *Medina v. State*, 35 P.3d 443, 449 (Colo.2001) (if necessary, plaintiff must establish a waiver of immunity through a C.R.C.P. 12(b)(1) hearing by showing elements of an alleged dangerous condition).

Here, under the whistleblower statute, "only certain kinds of disclosures are protected." *Ward v. Indus. Comm'n*, 699 P.2d 960, 967 (Colo.1985). Thus, if Ferrel did not make a "disclosure of information" protected by the whistleblower statute, the CGIA would not waive sovereign immunity. *See* § 24–50.5–102(2) (defining "disclosure of information").

We therefore conclude the trial court properly determined subject matter jurisdiction over Ferrel's whistleblower claims at a *Trinity* hearing in the same way that jurisdiction under the CGIA generally is determined. We further conclude the trial court properly decided the disputed question of whether the memorandum and letter constituted "disclosure[s] of information" protected by the whistleblower statute through a *Trinity* hearing.

We reject Ferrel's contention that *City of Lakewood v. Brace*, 919 P.2d 231 (Colo.1996), compels a different result. *Brace* distinguished between issues of qualified and sovereign immunity and held that, whether a public employee acted willfully and wantonly, and thus could be liable under the CGIA, was a matter to be determined at trial instead of on a C.R.C.P. 12(b)(1) motion. After the facts underlying *Brace* occurred, but before the supreme court issued its decision in that case, the General Assembly amended the CGIA to require issues of sovereign immunity be resolved in pretrial proceedings. *See* § 24–10–118(2.5), C.R.S.2006; *Gallagher v. Bd. of Trs., supra*, 54 P.3d at 394–95 n. 7.

■ We likewise reject Ferrel's contention that when subject matter jurisdiction under the CGIA is intertwined with the merits of the case, the trial court should consider a C.R.C.P. 12(b)(1) motion as one for summary judgment under C.R.C.P. 56. The supreme court has rejected the suggestion that summary judgment standards apply when determining issues of immunity. *See Finnie v. Jefferson County Sch. Dist. R–1*, 79 P.3d 1253, 1258–59 (Colo.2003); *Trinity, supra*, 848 P.2d at 924–25.

### 2. Preponderance Standard

■ Ferrel contends that even if a *Trinity* hearing is required, he should have been

required to prove the court's subject matter jurisdiction only by a prima facie showing, rather than by a preponderance of the evidence. In this case, we are not persuaded.

■ Initially, we reject Ferrel's contention that, because a different trial judge initially ruled that Ferrel need make only a prima facie showing of his whistleblower claims, the second trial judge was bound by law of the case to follow that ruling. *See Giampapa v. Am. Family Mut. Ins. Co.*, 64 P.3d 230, 243 (Colo.2003)(the law of the case doctrine neither requires nor encourages courts to support erroneous judgments); *see also Pearson v. Dist. Court*, 924 P.2d 512, 515 (Colo.1996).

We conclude that when the resolution of disputed facts is necessary to determine the court's jurisdiction, application of a prima facie standard is directly at odds with the very purpose of a *Trinity* hearing. Several reasons support this conclusion. First, although *Trinity* did not state the degree of proof required to satisfy the plaintiff's burden, the General Assembly has determined that in civil actions the generally applicable burden of proof is preponderance of the evidence. Section 13–25–127(1), C.R.S.2006, provides that "[a]ny provision of the law to the contrary notwithstanding ... the burden of proof in any civil action shall be by a preponderance of the evidence."

Second, if a plaintiff need only make a prima facie showing when the resolution of disputed facts is necessary to determine the court's jurisdiction, then the trial court could assess the plaintiff's evidence on its face and forgo the evidentiary proceedings mandated by the supreme court in *Trinity*. *See Tidwell v. City & County of Denver, supra*, 83 P.3d at 85–86 ("[w]hen the alleged jurisdictional facts are in dispute, the trial court should conduct an evidentiary hearing and enter findings of fact").

■ Third, federal courts conclude that preponderance of the evidence is the proper evidentiary standard to resolve a Fed.R.Civ.P. 12(b)(1) motion. *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 289 (3d Cir.2006); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000); *United States ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999). Because Fed.R.Civ.P. 12(b)(1) is virtually identical to C.R.C.P. 12(b)(1), we may look to federal authorities for guidance. *See, e.g., In re Estate of Krotiuk*, 12 P.3d 302, 305 (Colo.App.2000) (absent controlling Colorado authority, we may look to federal precedent for guidance in construing the language of the comparable Colorado rule).

We therefore conclude that because the resolution of disputed facts was necessary to determine the court's subject matter jurisdiction, the trial court did not err in requiring Ferrel to prove the court's subject matter jurisdiction by a preponderance of the evidence.

### B. "Disclosures of Information"

Ferrel contends the trial court erred in determining that his documents were not "disclosures of information" protected under the whistleblower statute because its ruling (1) contradicted the holding in *Ferrel I* and, thus, violated the law of the case doctrine; (2) added a "public concern" requirement not included in the statutory definition of "disclosure"; and (3) was contrary to the record. We address and reject each contention.

#### 1. Law of the Case

■ Ferrel contends that because the division in *Ferrel I* determined the memorandum and letter were disclosures of information within the scope of the whistleblower statute, the trial court's order concluding otherwise violated the law of the case doctrine. We disagree.

■ The law of the case doctrine applies to mandates of an appellate court, absent new evidence or arguments. *See Mayer v. Sampson*, 157 Colo. 278, 285, 402 P.2d 185, 189 (1965); *Gavend v. Malman*, 946 P.2d 558, 561 (Colo.App.1997).

We are not persuaded that *Ferrel I* should have been afforded preclusive effect to the extent urged by Ferrel. A review of *Ferrel I* reveals that it determined the memorandum and letter constituted "disclosures of information within the whistleblower statute" on the basis of the two documents alone, in the absence of testimony or other evidence de-

scribing their context or meaning. Nevertheless, *Ferrel I* also remanded the case for further proceedings, including a hearing on the complaint. *See* Colo. Sess. Laws 1997, ch. 251, § 24–50.5–104(1) at 1417–18 (the Board, after receipt of a complaint, "shall cause an investigation of the charges to be made"). *But see* § 24–50.5–104(1), C.R.S. 2006 (current version, effective August 7, 2006, provides for review and hearing, but not an investigation by the Board). If an employee is unsuccessful before the Board, he or she may then file a separate civil action in the district court. Colo. Sess. Laws 1979, ch. 250, § 24–50.5–105 at 967; cf. § 2450.5105, C.R.S.2006 (current version is substantially similar).

We conclude the trial court properly revisited the issue of whether Ferrel's letter and memorandum could be construed as disclosures under the whistleblower statute. Ferrel did not appeal the Board's adverse ruling against him, but instead chose to commence a new case in the trial court, as contemplated by § 24–50.5–105. Once these new proceedings were initiated, the trial court had a duty to determine whether, under the CGIA, it had subject matter jurisdiction by determining whether Ferrel had made a disclosure of information protected by the whistleblower statute. *See Trinity, supra,* 848 P.2d at 925.

Moreover, the whistleblower statute does not provide that rulings made in the administrative proceedings have any preclusive effect in the trial court. *See* § 24–50.5–105, C.R.S.2006. If rulings during administrative proceedings were given such effect, there would be no basis for the whistleblower statute to provide that aggrieved parties could file a second action in the trial court because it would be subject to immediate dismissal.

Further, Ferrel elected to file his new complaint in the trial court against different parties. Ferrel's administrative complaint was filed only against DOC, whereas his trial court complaint also named individual defendants. *See Hamilton v. Leavy,* 322 F.3d 776, 787 (3d Cir.2003) (holding law of the case does not prevent defendants added subsequent to disposition of previous appeal from relitigating factual issues); *United States v. Dexter,* 165 F.3d 1120, 1124 (7th Cir.1999)

("[t]he law of the case doctrine should not be read so rigidly that it precludes a party from raising an argument that it had no prior opportunity to raise" (quoting *Bagola v. Kindt,* 131 F.3d 632, 637 (7th Cir.1997)) );18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4478.5 n. 43 (2d ed.2005) (noting that "[b]asic principles of fairness dictate that a nonparty who is joined involuntarily should be free to seek determination of dispositive issues" (quoting *Research Consulting Assocs. v. Elec. Power Research Inst.,* 626 F.Supp. 1310, 1312 (D.Mass.1986)) ).

▮ Finally, contrary to Ferrel's contention, the trial court's independent inquiry is not inconsistent with the law of the case doctrine because that doctrine permits reconsideration of a ruling based on new evidence. *See Mayer v. Sampson, supra,* 157 Colo. at 285, 402 P.2d at 189; *In re Marriage of Balanson,* 107 P.3d 1037, 1043 (Colo.App. 2004) (generally, a mandate from an appellate court must be followed in subsequent proceedings on remand, absent new evidence or arguments). This is especially true when an appellate court remands a case for further proceedings. *See Moland v. People,* 757 P.2d 137, 141 (Colo.1988) ("we do not read the court of appeals' opinion to foreclose further consideration of the issue on remand").

▮ Whether a disclosure falls within the whistleblower statute is a question of fact. *See Lanes v. O'Brien,* 746 P.2d 1366, 1370 (Colo.App.1987) (holding elements of whistleblower claim are questions of fact); *see also Ward v. Indus. Comm'n, supra,* 699 P.2d at 968 (on remand, the commission must determine whether "the claimant's evidence establishes that his expression was protected by the 'whistleblower' statute"). Thus, despite the *Ferrel I* division's opinion that Ferrel's documents were, on their face, disclosures under the statute, it was appropriate for the trial court to hear new evidence on this issue and make an independent determination based on all the evidence.

Accordingly, the trial court's order concluding the memorandum and letter were not disclosures of information within the whistle-

blower statute did not violate the law of the case doctrine.

## 2. "Public Concern"

Ferrel also contends the trial court's determination that a disclosure must touch on a matter of "public concern" adds a requirement not included in the statutory definition of "disclosure" under the whistleblower statute. Again, we disagree.

We review statutory interpretation de novo. *Colo. State Bd. of Accountancy v. Paroske,* 39 P.3d 1283, 1286 (Colo.App.2001). "In resolving an issue of statutory interpretation, 'a court's essential task is to determine and give effect to the intent of the legislature.'" *Premier Farm Credit, PCA v. W–Cattle, LLC,* 155 P.3d 504, 513 (Colo.App. 2006) (quoting in part *People v. Goodale,* 78 P.3d 1103, 1107 (Colo.2003)). To accomplish this task, we must first examine the plain language of the statute itself. *People v. Dist. Court,* 713 P.2d 918, 921 (Colo.1986). If the language is clear and unambiguous, we must interpret it as written. *People v. Goodale, supra; Premier Farm Credit, PCA v. W–Cattle, LLC, supra.*

A court must read a statute as a whole and construe it to give consistent, harmonious, and sensible effect to all its parts. In *Interest of K.M.T.,* 33 P.3d 1276, 1277 (Colo.App. 2001).

The purpose of the whistleblower statute, set forth in § 24–50.5–101, C.R.S.2006, is that "state employees should be encouraged to disclose information on actions of state agencies *that are not in the public interest."* (Emphasis added.) The disclosure of information must be "regarding any action, policy, regulation, practice, or procedure, including, but not limited to, the waste of public funds, abuse of authority, or mismanagement of any state agency." Section 24–50.5–102(2); *see Ward v. Indus. Comm'n, supra,* 699 P.2d at 967.

■ Thus, although the statutory definition for disclosure does not use the phrase "public concern," § 24–50.5–101 clearly contemplates that such disclosures must relate to information about agency conduct contrary to the "public interest." Therefore, disclo-sures that do not concern matters in the public interest, or are not of "public concern," do not invoke this statute. Courts in other jurisdictions have reached similar conclusions. *See, e.g., Coutee v. Lafayette Neighborhood Hous. Servs., Inc.,* 792 N.E.2d 907, 914 (Ind.Ct.App.2003); *Montgomery v. E. Corr. Inst.,* 377 Md. 615, 835 A.2d 169, 185 (2003); *McNaughton v. City of New York,* 234 A.D.2d 83, 650 N.Y.S.2d 688, 689 (1996); *Tex. Dep't of Criminal Justice v. Terrell,* 925 S.W.2d 44, 58 (Tex.App.1995).

Accordingly, the trial court did not err in concluding that disclosures must be of "public concern" in order to be protected under the statute.

## 3. Ferrel's Documents

Ferrel also contends the trial court's findings of fact were unsupported, and his documents indeed raise matters of "public concern" because (1) the memorandum described the involuntary move of an inmate who was not mentally ill and Ferrel's concern about possible involuntary mental health treatment; (2) the documents described Montoya's and the warden's efforts to institute their own chain of command over mental health decisions; and (3) the memorandum disclosed "systemic harassment." We disagree with each contention.

■ Where the jurisdictional issue involves a factual dispute, a reviewing court employs the clearly erroneous standard of review to the trial court's findings. *Tidwell v. City & County of Denver, supra,* 83 P.3d at 81.

### a. Involuntary Move of an Inmate

■ While Ferrel was in charge of mental health services at the Sterling Correctional Facility, a disruptive inmate had a list of weapons and ammunition, and directions for making a pipe bomb. This inmate kicked doors, yelled violent statements, and created disruptions in the cell block. He also banged his head to the extent he had damaged a brand new helmet. Although Ferrel clinically determined that this inmate was not in a mental health crisis, he was directed to complete paperwork to transfer this inmate to

another facility's infirmary. Montoya documented Ferrel's response to this request because she thought Ferrel was angry, argumentative, and uncooperative. The infirmary bed was the only available bed for transfer outside of the Sterling Correctional Facility. The trial court rejected Ferrel's contention that the memorandum raised issues of public concern, finding "the issue boiled down to whether the inmate should be transferred for the inmate's and the facility's safety."

We conclude that the record supports the trial court's finding because (1) DOC regulations allow the physical transfer of an inmate for reasons of safety, see DOC Admin. Reg. 600–01 (Jan. 1, 1999); (2) the inmate's rights were not violated by such a transfer because inmates have no right to refuse a transfer; (3) transfer to an infirmary does not necessarily result in involuntary mental health treatment, because inmates may be transferred to isolate them from the prisoner population; (4) DOC officials were informed of, and supported, this inmate's transfer; (5) Ferrel's clinical diagnosis was never overridden; and (6) Ferrel admitted that transferring this inmate "absolutely" made sense and was the safe and cautious thing to do.

### b. Chain of Command

■ Ferrel claimed that during the meeting he had with Montoya and the warden, Montoya and the warden were trying to subvert the chain of command for clinical services as established by DOC regulations and thereby impede or eliminate Ferrel's ability to make independent clinical judgments. The trial court rejected Ferrel's claim by finding "this was an issue relative to internal management."

Again, we conclude that the record supports the trial court's finding because (1) although Ferrel's first letter alleged that the warden said he was part of Ferrel's chain of command, the warden denied making that statement and instead claimed that Ferrel misstated the proper chain of command, which prompted the warden to correct him; (2) during the meeting he had with Montoya and the warden, Ferrel never mentioned that he felt the chain of command was being violated; (3) the letter does not refer to any

actual abuses of authority; (4) witnesses testified that the warden never gave Ferrel any orders in violation of the chain of command; and (5) the chief of mental health was supportive of the notion that, within the dual management structure, "security concerns" played a role in the chain of command.

### C. Systemic Harassment

■ Ferrel claimed his letter showed systemic harassment was taking place at the Sterling Correctional Facility, directed not only against him, but also against other employees. The trial court found otherwise:

[T]his letter followed several months of disagreements between Dr. Ferrel and [Montoya] ... as well as [the nursing supervisor], and others. Some of these centered around perceptions that Dr. Ferrel was not a "team player," that he had been slow in implementing needed programs, that he had a poor attitude toward many female staff, and that he did not have sufficient control over his anger.

Although Ferrel's letter mentioned "harassment as a management technique," the court determined this statement was a "vague and sweeping generality." The court also determined that "no evidence was produced either in the letter or at trial, that was supportive of Dr. Ferrel's assertions ... regarding the harassment of others" and, therefore, the letter did not address a matter of "public concern."

Once more, we conclude that the record supports the trial court's determination because (1) Ferrel admitted his letter reported that he felt "personally harassed and targeted" and, accordingly, the letter asked for an internal grievance investigation into the conduct of three individuals with whom Ferrel was feuding; (2) this internal grievance investigation concluded that the issues raised in the memorandum were personal issues that should be resolved through supervisory channels; (3) although Ferrel contended a "substantial number" of employees were being harassed, he identified only one other employee who felt fearful; (4) only one employee—who had been terminated for falsifying medical records—corroborated Ferrel's claim of use of harassment as a management

technique; and (5) three DOC supervisors testified that they received no reports from other employees claiming harassment.

Under these circumstances, we cannot say the trial court clearly erred in concluding that neither the memorandum nor the letter constituted "disclosure [s] of information" protected under the whistleblower statute because they did not touch upon matters of "public concern." *See Tidwell v. City & County of Denver, supra,* 83 P.3d at 81.

## III. § 1983 Claim

Ferrel next contends the trial court erred in dismissing his 42 U.S.C. § 1983 claim on the basis of the statute of limitations. Ferrel does not dispute that the two-year statute of limitations had expired before he commenced this action in the trial court, but he nonetheless contends the trial court's order dismissing his § 1983 claim was in error because (1) if brought earlier, his § 1983 claim may have been subject to dismissal for failure to exhaust state administrative remedies; (2) the trial court should have tolled the statute as a matter of comity while his whistleblower claim was pending in state administrative proceedings; and (3) the statute of limitations should be equitably tolled. We reject each contention.

### A. Exhaustion of Administrative Remedies

We reject Ferrel's contention that his § 1983 claim may have been subject to dismissal for his failure to exhaust state administrative remedies.

A plaintiff need not exhaust state administrative procedures before instituting an action in reliance on § 1983. *Felder v. Casey,* 487 U.S. 131, 147, 108 S.Ct. 2302, 2311, 101 L.Ed.2d 123 (1988) (citing *Patsy v. Bd. of Regents,* 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982)); *State v. Golden's Concrete Co.,* 962 P.2d 919, 925 (Colo.1998); *Montoya v. City of Colorado Springs,* 770 P.2d 1358, 1364 (Colo.App.1989). A possible exception is where the § 1983 claim is based on an asserted deprivation of a property interest without prior notice or hearing in violation of a right to procedural due process. *Montoya v. City of Colorado Springs, supra,* 770 P.2d at 1364.

The plaintiff has the burden of establishing a factual basis for tolling the statute. *Crumpton v. Perryman,* 956 P.2d 670, 673 (Colo.App.1998).

Here, because Ferrel does not assert any procedural due process violations, and has not established a factual basis for tolling the statute, we conclude the trial court correctly determined he did not need to exhaust state administrative remedies before filing his § 1983 claim.

### B. Comity

We also reject Ferrel's contention that considerations of comity require a plaintiff to exhaust administrative remedies before filing a § 1983 claim. In *Patsy v. Board of Regents, supra,* 457 U.S. at 512–13, 102 S.Ct. at 2566, the Supreme Court plainly rejected that contention.

Ferrel's reliance on *State v. Golden's Concrete Co., supra,* for the proposition that his claim may have been barred because adequate administrative remedies existed, is misplaced. That case involved the unique situation, not present here, wherein state taxpayer litigants must exhaust state administrative remedies before bringing a federal claim. *See State v. Golden's Concrete Co., supra,* 962 P.2d at 925.

### C. Equitable Tolling

We are also not persuaded by Ferrel's argument that the trial court erred in failing to apply the equitable tolling doctrine.

Equitable tolling is limited to situations in which either (1) the defendant's wrongful conduct prevented the plaintiff from asserting the claim in a timely manner; or (2) extraordinary circumstances prevented the plaintiff from filing the claim within the statutory period. The latter basis for equitable tolling requires the plaintiff to make good faith efforts to pursue any claim. *Dean Witter Reynolds, Inc. v. Hartman,* 911 P.2d 1094, 1098–99 (Colo.1996); *Noel v. Hoover,* 12 P.3d 328, 330 (Colo.App.2000).

**189**

Here, Ferrell has not asserted, nor is there any indication, he was prevented from bringing his claim within the limitations period. *See Noel v. Hoover, supra,* 12 P.3d at 331.

Accordingly, we reject Ferrel's contentions the trial court erred in dismissing his 42 U.S.C. § 1983 claim on the basis of the statute of limitations.

## IV. Attorney Fees

 Defendants request awards of attorney fees incurred in defending this appeal. We conclude that such awards are appropriate.

An award of attorney fees is mandatory when a trial court dismisses an action under the CGIA for lack of subject matter jurisdiction. *Smith v. Town of Snowmass Village,* 919 P.2d 868, 873 (Colo.App.1996). A party who successfully defends such a dismissal order is also entitled to recover reasonable attorney fees on appeal. *Wark v. Bd. of County Comm'rs,* 47 P.3d 711, 717 (Colo.App.2002).

As both DOC and the Board have prevailed on appeal, we conclude that an award of their appellate attorney fees under § 13–17–201, C.R.S.2006, is appropriate. *See Wark v. Bd. of County Comm'rs, supra,* 47 P.3d at 717.

Accordingly, we must remand to the trial court for a determination of reasonable fee awards. *See Krystkowiak v. W.O. Brisben Cos.,* 90 P.3d 859, 872 (Colo.2004).

Montoya's request for attorney fees relating to Ferrel's appeal of the § 1983 claim is governed by 42 U.S.C. § 1988. Under those provisions, a prevailing party may recover fees only upon a finding that the plaintiff's action was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *State v. Golden's Concrete Co., supra,* 962 P.2d at 926 (quoting *Hughes v. Rowe,* 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980)). Because we conclude Ferrel's appeal of the dismissal of his § 1983 claim was not frivolous, unreasonable, or without foundation, we deny Montoya's request as it relates to that claim.

## V. Conclusion

Based on our conclusion that Ferrel's claims were properly dismissed, it is not necessary to address the parties' remaining contentions.

The judgment is affirmed, and the case is remanded for determination of awards of reasonable attorney fees consistent with this opinion.

Judge MÁRQUEZ and Judge ROY concur.