25CA0589 Russell v Dept of Local Affairs 03-12-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0589
State Personnel Board Case No. 2024G98

Ebony Russell,

Complainant-Appellant,

v.

Colorado Department of Local Affairs,

Respondent-Appellee.

and

State Personnel Board,

Appellee.

ORDER AFFIRMED

Division I
Opinion by JUDGE MEIRINK
J. Jones and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 12, 2026

Ebony Russell, Pro Se

Philip J. Weiser, Attorney General, Eric W. Freund, Senior Assistant Attorney General, Denver, Colorado, for Respondent-Appellee

No Appearance for Appellee

¶ 1     Complainant, Ebony Russell, appeals the decision of the State Personnel Board (Board) denying her petition for a discretionary hearing.  We affirm.

## I.     Background

### A.     Factual Background

¶ 2     The Colorado Department of Local Affairs (DOLA) works with public and private housing developers, housing organizations, and local governments to develop and finance affordable and safe housing.  Russell worked for DOLA's Division of Housing on the Housing Assistance Team as a Housing Asset Manager.  In this capacity, she managed a portfolio of projects receiving state and federal funds, including funds from the federal Department of Housing and Urban Development (HUD).  She was responsible for ensuring that the proper documents were completed and filed for each project and that deadlines were being met.  Russell also maintained and managed record files for each project she oversaw.  All completed federal projects had to be "closed out."  Russell was responsible for creating "closeout letters" — required, official government documents sent to a loan grantee indicating the project was completed and closed.  Russell would prepare the closeout

1

letters for her projects and submit them to her supervisor for her supervisor's signature; the signed letters were then sent to the loan grantee to notify them of the project's status change.

### 1. Russell's Emails with Bowman

¶ 3    In September 2023, Russell exchanged multiple emails with Dave Bowman, Deputy Director for the Division of Local Government at DOLA. Russell and Bowman discussed a guidance memorandum they were drafting for the Impact Development Fund (IDF). The IDF was providing financial assistance to homeowners who were rebuilding their homes after the Marshall Fire. During the email exchange, Russell told Bowman that federal regulations required the IDF or the homeowners to maintain documentation that general contractors were properly bonded and insured. Russell was concerned that a failure to maintain the general contractors' proof of insurance in the IDF files could damage the state's relationship with HUD in the event of an audit or that it could expose homeowners to potential harm if a general contractor wasn't insured.

¶ 4    Bowman disagreed and told Russell that such documentation wasn't necessary because (1) the projects in question weren't

federally funded; (2) the loans to the individual homeowners were below the regulatory threshold; and (3) general contractors were already required to be insured to obtain construction permits from their local governments. Bowman also noted that adding an additional requirement for the IDF and homeowners would be overly burdensome.

### 2. Allegations of Russell's Misconduct

¶ 5 In August 2023, DOLA conducted a routine review of the asset managers' federal projects to ensure that the required monitoring was being conducted.[1] During the review, DOLA discovered multiple deficiencies and missing documents in project files for projects managed by Russell. Specifically, one of Russell's projects (Project 17-056) had been closed out but didn't have a closeout letter and was missing other documentation. After being notified about the deficiency, Russell drafted a closeout letter and copied and pasted the signature of her former supervisor, Julia Zaffarano, on the letter without Zaffarano's authorization. Russell later

---

[1] Once a federal project had been closed out by the asset manager, the project was moved to the long-term monitoring team for the ongoing monitoring required by federal programs.

admitted that she falsified the closeout letter and added it to the file for Project 17-056.

¶ 6 Separately, around this time, DOLA discovered that Russell had failed to report mileage tracking for the state-owned vehicle that she was assigned to use and share with two other employees.[2] Per DOLA's policy and the Vehicle Use Agreement that Russell signed, assigned drivers were required to report their odometer readings monthly, which Russell failed to do from February 2023 through October 2023.

¶ 7 In October 2023, Alison George, the Director of the Division of Housing, delegated authority to Maulid Miskell, the Deputy Division Director, to contact Russell and schedule a "Rule 6-10 meeting." A Rule 6-10 meeting is held when an appointing authority finds performance issues or conduct that may warrant a disciplinary action; the meeting allows the employee an opportunity to respond to the alleged performance or conduct concerns prior to a final determination. *Berumen v. Dep't of Hum. Servs., Wheat Ridge Reg'l Ctr.*, 2012 COA 73, ¶ 20. Because DOLA's Human Resources

---

[2] Russell is Black. The other state employees who she shared the vehicle with are White.

Department needed more time to gather relevant information and investigate the allegations against Russell, the Rule 6-10 meeting was postponed. Russell was placed on paid administrative leave on November 1, 2023, pending investigation into the alleged misconduct. Russell's administrative leave was extended in January 2024 and again in March 2024 to allow the investigation to be completed.

¶ 8    The investigation focused on four allegations against Russell: (1) the unauthorized use of Zaffarano's signature in the Project 17-056 closeout letter; (2) incomplete letters and project files; (3) communication issues related to the emails with Bowman; and (4) not reporting mileage tracking for the assigned state vehicle. The investigation report was completed in March 2024. Although the investigator couldn't confirm or rule out the second or third allegations, he was able to substantiate the first and fourth allegations — that Russell falsified Zaffarano's signature and failed to report mileage for her state-assigned vehicle.

¶ 9    While the investigation was ongoing, Zaffarano discovered a second falsified document in another of Russell's project files. Specifically, Zaffarano found that the Contract Monitoring Letter in

the file for Project 18-009 contained an unauthorized signature and was backdated. The document bore Kim Snetzinger's signature and was dated October 15, 2020, on the first page and October 15, 2019, on the second page. A review of the electronic file revealed that Russell created the document for the letter on April 20, 2021, and uploaded it to the electronic file on August 1, 2023. However, Snetzinger's last day of employment with DOLA was March 27, 2020.

¶ 10    Based on the investigation and discovery of the second falsified document, in early April 2024, Miskell contacted Russell to schedule the Rule 6-10 meeting. After exchanging several emails, the Rule 6-10 meeting was scheduled for May 3, 2024. On April 23, 2024, George notified Russell that she was rescinding Miskell's delegation authority and that George would be conducting the Rule 6-10 meeting instead of Miskell. The meeting was held on May 3, 2024, and June 25, 2024. George terminated Russell's employment in July 2024.

### B.    Procedural History

¶ 11    On April 23, 2024, Russell filed a consolidated appeal and dispute with the Board alleging retaliation (based on her

disagreement with Bowman) in violation of the State Employee Protection Act (Whistleblower Act), , §§ 24-50.5-101 to -108, C.R.S. 2025, and racial discrimination in violation of the Colorado Anti-Discrimination Act (CADA), §§ 24-34-400.2 to -408, C.R.S. 2025.[3] She also asserted that Miskell should have been precluded from conducting the Rule 6-10 meeting based on a conflict of interest — namely, that Bowman complained to Miskell about Russell's performance.

¶ 12    Russell and DOLA submitted information sheets outlining information and evidence regarding their appeal allegations, defenses, underlying facts, and arguments.  *See* Dep't of Pers. & Admin. Rule 8-35, 4 Code Colo. Regs. 801-1.  Russell sought reinstatement, back pay, compensation for emotional distress, punitive damages, and an investigation into DOLA's bad faith actions.  DOLA asked the Board to deny Russell's petition for a

---

[3] Russell initially filed a whistleblower complaint form.  At the Board's direction, she later filed her consolidated appeal and dispute form on May 8, 2024, to comply with the State Personnel Board Rules and Personnel Director's Administrative Procedures. *See* Dep't of Pers. & Admin. Rule 8-21(A), 4 Code Colo. Regs. 801-1 ("Employees shall file both the [appeal form] and the Whistleblower Complaint Form.").

hearing and to dismiss her appeal because the Board lacked jurisdiction and Russell failed to establish a prima facie case of retaliation or discrimination.

¶ 13    The ALJ issued a preliminary recommendation that first concluded that Russell had abandoned her CADA retaliation claim and her claim that DOLA violated the Board's grievance procedures by failing to present any evidence to support these claims in her information sheet.  Next, the ALJ concluded that Russell's whistleblower and discrimination claims were filed more than ten days after the alleged discriminatory practices; therefore, the Board lacked jurisdiction to hear them.  Even if the Board had jurisdiction to hear the claims, however, the ALJ concluded that Russell failed to establish prima facie claims of whistleblower retaliation and racial discrimination.

¶ 14    At a public meeting on March 18, 2025, the Board reviewed the ALJ's preliminary recommendation.  It found sufficient basis to adopt the preliminary recommendation and denied Russell's petition for a hearing.

II.     Analysis

¶ 15    On appeal, Russell contends that the Board erred by adopting

the ALJ's determination that (1) the Board lacked jurisdiction to

hear her whistleblower and discrimination claims; (2) she failed to

establish a prima facie case of whistleblower retaliation and racial

discrimination; and (3) she abandoned her CADA retaliation claim

and her claim that DOLA violated the Board's grievance procedures.

We address and reject each contention in turn.

### A.     Appellate Rules

¶ 16    As an initial matter, Russell's opening brief does not comply

with several of the appellate rules for briefing.  *See* C.A.R. 28.  For

instance, for each issue Russell raises, the brief lacks a statement

of the applicable standard of review and a statement of

preservation, and it infrequently cites the record.  *See* C.A.R.

28(a)(7)(B) (The appellant must provide reasoning, "with citations to

the authorities and parts of the record on which the appellant

relies. . . .").

¶ 17    The appellate rules are not technicalities; they are designed to

enable appellate review.  *Cikraji v. Snowberger*, 2015 COA 66, ¶ 10.

A party's pro se status doesn't excuse the failure to comply with the

appellate rules. *See Cornelius v. River Ridge Ranch Landowners Ass'n*, 202 P.3d 564, 572 (Colo. 2009) (noting that while courts may consider a party's pro se status, pro se parties are still bound by the rules). Nevertheless, we recognize that it's challenging for a person who isn't a lawyer to represent themselves in legal proceedings. Taking that into account, *see id.*, we elect to address Russell's arguments as best we understand them.

## B. Russell's Whistleblower and Discrimination Claims Were Not Filed Within the Jurisdictional Filing Period

¶ 18 Russell argues that the Board erred by concluding that it lacked jurisdiction to review her claims for whistleblower retaliation and racial discrimination. We disagree.

### 1. Standard of Review and Applicable Law

¶ 19 We review the Board's final orders under Colorado's Administrative Procedure Act (APA). § 12-20-408(1), C.R.S. 2025 (providing that judicial review shall be conducted in accordance with section 24-4-106(11), C.R.S. 2025). Under the APA, we may overturn the Board's decision only if it was arbitrary or capricious, was unsupported by the record, was contrary to law, or exceeded the Board's authority. *See* § 24-4-106(7)(b); *Lawley v. Dep't of*

*Higher Educ.*, 36 P.3d 1239, 1247 (Colo. 2001); *see also* § 24-4-106(11)(e) (directing the reviewing court to apply the standard of review set forth in section 24-4-106(7)). "Where the challenge is to the Board's resolution of an ultimate conclusion of fact, a reviewing court must determine whether the record contains sufficient evidence showing a reasonable basis in law for the Board's conclusion." *Colo. Dep't of Hum. Servs. v. Maggard*, 248 P.3d 708, 712 (Colo. 2011). The correctness of a legal conclusion drawn by the Board from undisputed facts is a matter for the appellate court, and when the Board's decision is based on an improper application of the law, we may set the decision aside. *See Coates, Reid & Waldron v. Vigil*, 856 P.2d 850, 856 (Colo. 1993).

¶ 20 "Any employee in the state personnel system may file a written complaint with the [Board] within ten days after the employee knew or should have known of a disciplinary action . . . ." § 24-50.5-104(1), C.R.S. 2025; *see also* Dep't of Pers. & Admin. Rule 8-7, 4 Code Colo. Regs. 801-1 ("Appeals or petitions for hearing are timely if received by the Board or postmarked no later than ten (10) days after receipt of the written notice of the action, or if no notice was required, no later than ten (10) days after the employee knew or

11

should have known of the alleged improper action.").  The Board does not have jurisdiction to review an action that is not timely appealed.  *State Pers. Bd. v. Gigax*, 659 P.2d 693, 694 (Colo. 1983).

### 2.    Analysis

¶ 21    Russell was first notified of a disciplinary action on October 16, 2023, when she was told of the initial Rule 6-10 meeting.  Miskell reissued the notice on October 25, 2023, and Russell was placed on paid administrative leave on November 1, 2023.  Following the investigative report, Miskell contacted Russell on April 4, 2024to schedule the Rule 6-10 meeting.  Russell responded the next day, acknowledging that she had received the April 4 email.  Russell also responded to a separate email on April 4 and 5, 2024, objecting to Miskell's role in the hearing.  Using April 5, 2024, as the calculation date for when Russell "knew . . . of a disciplinary action," § 24-50.5-104(1), Russell should have filed her complaint and appeal by April 15, 2024.  Because Russell didn't file the complaint and appeal until April 23, 2024, her whistleblower claim was untimely.

¶ 22    Russell's assertion that these actions constituted "continuing violations" is unavailing.  Each alleged violation — the issuance of a

12

disciplinary notice, the placement on administrative leave, and the notice of who would conduct the hearing — occurred on discrete, identifiable dates. The harm, if any, arose from the notifications themselves and was complete when the notices were sent, regardless of the duration of any resulting leave. Because these were not continuing violations, Russell's whistleblower claim is time barred. *See Subryan v. Regents of the Univ. of Colo.*, 789 P.2d 472, 475 (Colo. App. 1989) ("A completed act, such as termination, is not a continuing violation.").

¶ 23 Russell's discrimination claim, which alleged disparate treatment because other White coworkers weren't disciplined for also failing to report mileage for a state-owned vehicle, similarly fails. Under section 24-50-125.3, C.R.S. 2025, Russell was required to file her discrimination claim within ten days of the alleged discriminatory practice. Again, even using April 5, 2024, as the notice date, Russell didn't file her discrimination claim until April 23, 2024.

¶ 24 Because Russell's whistleblower and discrimination claims were untimely, the Board lacked jurisdiction to hear them. We

therefore discern no error with the Board's decision to dismiss those claims on that basis.

### C. Russell Failed to Establish a Prima Facie Case for Her Whistleblower and Discrimination Claims

¶ 25 While we conclude that the Board lacked jurisdiction to hear Russell's whistleblower and discrimination claims, because of her pro se status, we elect to address their merits.

#### 1. Russell's Whistleblower Claims

¶ 26 Russell contends that the Board incorrectly concluded that she failed to establish a prima facie case for whistleblower retaliation. We disagree.

##### a. Standard of Review and Applicable Law

¶ 27 We affirm the Board's decision to adopt the ALJ's determinations if the ultimate conclusion is supported by the evidentiary record and has a reasonable basis in the law. *Velasquez v. Dep't of Higher Educ.*, 93 P.3d 540, 542 (Colo. App. 2003).

¶ 28 The Whistleblower Act protects state employees from retaliation by an appointing authority or supervisor when an employee discloses "information on actions of state agencies that

14

are not in the public interest." § 24-50.5-101(1); *see* § 24-50.5-103, C.R.S. 2025. To establish a prima facie case of whistleblower retaliation, an employee must establish that (1) they disclosed information pertaining to a matter of public interest; (2) they were disciplined as defined by the Whistleblower Act; and (3) the disciplinary action occurred because of the disclosure of information. *See Ward v. Indus. Comm'n,* 699 P.2d 960, 966-68 (Colo. 1985); § 24-50.5-103(1).

### b.     Analysis

¶ 29    To establish the first element of a prima facie case of whistleblower retaliation, Russell had to disclose a matter of public interest. Matters of public interest are those "regarding any action, policy, regulation, practice, or procedure, including, but not limited to, the waste of public funds, abuse of authority, or mismanagement of any state agency." § 24-50.5-102(2), C.R.S. 2025; *accord Ward,* 699 P.2d at 967. Disclosures that "do not concern matters in the public interest, or are not of 'public concern,' do not invoke [the Whistleblower Act]." *Ferrel v. Colo. Dep't of Corr.,* 179 P.3d 178, 186 (Colo. App. 2007).

15

¶ 30    Russell's disclosures didn't relate to a matter of public concern. Rather, they involved an internal disagreement she and Bowman had over regulatory interpretation. In Russell's view, the IDF or the homeowners should have maintained documents demonstrating that their general contractors were properly bonded and insured. But in Bowman's opinion, such documentation was unnecessary because the projects weren't federally funded; the loans to the individual homeowners were below the regulatory threshold level; and in order to obtain construction permits from local governments, general contractors were already insured. Such a dispute doesn't implicate an abuse of authority, unethical conduct, or a waste of public funds and therefore does not constitute a matter of public concern. § 24-50.5-102(2); *see Ward,* 699 P.2d at 967. Although Russell asserted that Bowman's actions could harm homeowners and damage the state's relationship with HUD, her concerns were speculative. As a result, Russell failed to establish that her disclosure addressed a matter of public concern and, consequently, failed to satisfy the first element of a prima facie case of whistleblower retaliation.

¶ 31　To establish the second element of a prima facie case of whistleblower retaliation, Russell had to show that she was disciplined. A "disciplinary action" as defined in the Whistleblower Act is "any direct or indirect form of discipline or penalty, including, but not limited to, . . . suspension . . . or withholding of work, or the threat of any such discipline or penalty." § 24-50.5-102(1). Russell was issued multiple Rule 6-10 meeting notices, which, when viewed collectively, could reasonably be perceived as threatening disciplinary action. And Russell was placed on administrative leave, which effectively suspended her employment and removed her from the workplace. Accordingly, Russell satisfied the second element of a prima facie case of whistleblower retaliation, but only as to the issuance of multiple Rule 6-10 meeting notices and her placement on administrative leave.

¶ 32　To establish the third element of whistleblower retaliation, Russell had to show that the protected disclosure was a substantial or motivating factor in her adverse action. *Ward*, 699 P.2d at 968. We have already concluded that there was no protected disclosure here. But even if Russell's communication with Bowman was protected, the record doesn't support a finding that it was the

motivating factor behind the Rule 6-10 meeting notices or her placement on administrative leave. While the email prompted concerns about the appropriateness of Russell's tone, our review of the record reflects that DOLA's actions were driven by independent and serious allegations, including that Russell forged her supervisor's signature — an allegation that, on its own, warranted investigation — and Russell's failure to report mileage on the shared vehicle. These matters presented legitimate operational and compliance concerns separate from any protected communication. While the timing of the notices and administrative leave coincided with Russell's disclosure, they were also directly linked to the discovery of Russell's other alleged misconduct. Under these circumstances, the temporal proximity appears coincidental rather than causal, and the record does not suggest that Russell's communication was the determinative or motivating factor in the adverse action.

¶ 33    Because Russell failed to establish the first and third elements of a prima facie case of whistleblower retaliation, her claim necessarily fails, and the Board did not err by adopting the ALJ's recommendation to deny a hearing.

### 2. Russell's Racial Discrimination Claim

¶ 34 Russell also argues that the Board erred by concluding that she failed to establish a prima facie case of racial discrimination. We disagree.

#### a. Standard of Review and Applicable Law

¶ 35 As discussed above, we will affirm the Board's decision to adopt the ALJ's recommendation if it has a reasonable basis in law and is supported by the evidentiary record. *Velasquez*, 93 P.3d at 542.

¶ 36 CADA prohibits an employer from taking any adverse action against an employee based on race, national origin, or ancestry. § 24-34-402, C.R.S. 2025. To establish a prima facie case of discrimination, an employee must show that (1) they belong to a protected class; (2) they were qualified for the job at issue; (3) they suffered an adverse employment decision despite their qualifications; and (4) all the evidence in the record supports or permits an inference of unlawful discrimination. *Bodaghi v. Dep't of Nat. Res.*, 995 P.2d 288, 297 (Colo. 2000).

## b. Analysis

¶ 37 Russell contends that similarly situated White coworkers weren't threatened with discipline for failing to track mileage on a shared vehicle. This argument, however, overlooks several material facts. First, Russell had signed an acknowledgment expressly assigning her the responsibility for reporting vehicle mileage, yet she failed to do so for several months. Russell also failed to track the vehicle's mileage well before she started sharing it with her coworkers. Moreover, as discussed above, the October 16 and October 23, 2023, Rule 6-10 meeting notices didn't rest on the mileage issue alone; they also cited the allegation that Russell forged her former supervisor's signature on a closeout letter. That allegation, standing alone, provided an independent and sufficient basis for the issuance of the Rule 6-10 meeting notices and Russell's placement on administrative leave. The missing mileage issue was added later, after Russell was already aware of the Rule 6-10 meeting. Notably, Russell was never formally disciplined for the mileage tracking issue itself.

¶ 38 Russell also points to a White employee who was not disciplined after missing a contract renewal deadline. We agree

with the ALJ's conclusion that this comparison is inapt. While the cited conduct may have constituted negligence, it isn't comparable to Russell's alleged conduct of intentionally forging her supervisor's signature.

¶ 39    Accordingly, Russell failed to identify a similarly situated employee who engaged in comparable misconduct and was treated more favorably. She therefore did not establish a prima facie case of racial discrimination.

### D.    Russell Abandoned Her CADA Claim

¶ 40    Russell also argues that the Board erred by concluding that she abandoned her CADA retaliation claim and her claim that DOLA violated the Board's grievance procedures. We disagree.

### 1.    Standard of Review and Applicable Law

¶ 41    Again, where the Board adopts the ALJ's recommendation, we affirm the Board's decision if it is supported by the evidentiary record and has a reasonable basis in law. *Velasquez*, 93 P.3d at 542.

¶ 42    An applicant or employee who alleges discriminatory or unfair employment practices in the state personnel system may appeal by filing a complaint in writing with the Board. § 24-50-125.3. That

complaint is then referred to an ALJ, who reviews the information presented by both parties. Dep't of Pers. & Admin. Rule 8-26(A), 4 Code Colo. Regs. 801-1. The complainant "has the burden to persuade the Board that it appears the employment action violate[d] [their] rights," *id.* at Rule 8-25(D). The ALJ then makes "a [p]reliminary [r]ecommendation" to the Board as to whether a hearing should be granted or denied. *Id.* at Rule 8-26(B). From there, the Board considers the preliminary recommendation and renders its decision to grant or deny a hearing. *Id.* at Rule 8-27(A).

¶ 43 To establish a prima facie case of retaliation under CADA, a complainant must either provide direct evidence of retaliation or show that (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection existed between the protected conduct and the adverse employment action.

*Smith v. Bd. of Educ.*, 83 P.3d 1157, 1162 (Colo. App. 2003); *see*

*Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1227 (10th Cir. 2008).[4]

### 2. Analysis

¶ 44 We conclude that Russell failed to establish a prima facie case of unlawful retaliation under the CADA. Russell provided no direct evidence of retaliation. Therefore, her claim rested on her ability to demonstrate each element of the prima facie case. To satisfy the first element of such a claim, Russell was required to demonstrate that she engaged in activity protected by CADA prior to the alleged adverse action. *Bodaghi*, 995 P.2d at 297; *see* Dep't of Pers. & Admin. Rule 8-25(D), 4 Code Colo. Regs. 801-1. The record contains no such evidence. Russell's information sheet and reply don't address this claim or present argument or evidence showing that she engaged in any CADA-protected activity before filing her

---

[4] These cases concern retaliation claims under Title VII. However, we may rely on federal law when it is helpful in construing Colorado law. Because the applicable language in CADA is substantially similar to Title VII language that prohibits retaliation, we rely on cases interpreting Title VII. *Colo. C.R. Comm'n v. Big O Tires, Inc.*, 940 P.2d 397, 399 (Colo. 1997); *see also* Dep't of Pers. and Admin. Rule 9-4, 4 Code Colo. Regs. 801-1 (noting that state and federal case law should be referenced in determining whether discrimination occurred).

appeal. Apart from checking the box for CADA retaliation on the Board's standard appeal form, Russell took no action to pursue or develop a CADA claim. Russell therefore failed to establish any of the elements of a prima facie case of retaliation. Under these circumstances, Russell failed to meet her burden, and the Board correctly concluded that her claim was abandoned.

¶ 45    Russell likewise failed to establish any violation of the grievance procedures. To prevail on such a claim, she was required to show both that she invoked the grievance process and that DOLA failed to comply with the required procedures. *See* Dep't of Pers. & Admin. Rule 8-23, 4 Code Colo. Regs. 801-1. The grievance process requires an employee to submit a grievance to their supervisor, meet with the supervisor, and receive a written "Step One Decision." *Id.* at Rule 8-13(A). If no Step One Decision is issued, or if the employee is dissatisfied, the employee must submit a written "Step Two" grievance to the appointing authority and receive a written "Step Two Decision." *Id.* at Rule 8-13(B). Only after completion of these steps, or a failure to issue a Step Two Decision, may the employee appeal to the Board. *Id.* at Rule 8-14. The record contains no evidence that Russell initiated or participated in the

grievance process at any stage. As with her CADA claim, Russell's information sheet and reply do not address the grievance claim and present no evidence that DOLA failed to act or otherwise violated the grievance procedures. Russell's sole action was checking the box for a grievance claim on the Board's standard appeal form, which is insufficient to preserve or develop the claim. We agree that Russell abandoned her grievance claim.

## III. Disposition

¶ 46     We affirm.

JUDGE J. JONES and JUDGE LUM concur.