Ronald L. GODDARD, Petitioner,

v.

E G & G ROCKY FLATS, INC., and The Industrial Claim Appeals Office of the State of Colorado, Respondents.

No. 94CA0733.

Colorado Court of Appeals, Div. I.

Dec. 15, 1994.

William E. Benjamin, Boulder, for petitioner.

No appearance for respondents.

Opinion by Judge CRISWELL.

Claimant, Ronald L. Goddard, seeks review of a final order of the Industrial Claim Appeals Office (Panel) which upheld an appeals referee's decision disqualifying him from the receipt of unemployment compensation benefits pursuant to § 8–73–108(5)(e)(XXII), C.R.S. (1986 Repl.Vol. 3B) (quitting for personal reasons which do not support an award of benefits under other statutory provisions). We set aside the order.

The evidence before the referee was undisputed and disclosed the following:

The employer here is a contractor with the United States Department of Energy (department). The claimant had worked for the employer and its predecessor contractors since April 1984.

In the spring of 1993, because of budget cuts in the department, the employees working in the claimant's unit learned that all of the positions in that unit were to be transferred to Kansas City, but that none of them were to be given the right to transfer. They were not informed, however, of the date that such transfer was to take place.

While the referee made no findings upon the subject, the claimant testified, without contradiction, that, because of the secret nature of the work involved and because of the department's concern about the possibility of sabotage, individuals subject to layoff at the site were never given advance notice of the effective date of any layoff. Rather, on the date of the layoff, the employee is simply presented with the last paycheck and informed that he or she is not to return.

On September 15, 1993, the employer sent a letter to a number of employees, including claimant, which said:

> The FY 1994 Workshop Restructuring effort is currently underway. Each job classification has been carefully analyzed against our current projected workload. We feel it is in your best interest to advise you that your classification is one which *will be reduced.* If we do not receive enough *volunteers for layoff* in your classification, you could be at risk of being laid off involuntarily. (emphasis added)

At about the same time, claimant received a newsletter from the employer, explaining that "the intent of the voluntary [layoff] program is to *mitigate the impact* of reduction in the work force" (emphasis supplied) and that, if an employee accepted a voluntary layoff, he or she would receive an incentive payment, based upon length of service, in return for which the employee would waive any recall or re-employment rights.

Simultaneously, the employer advised claimant and the other employees in the same status that it had checked with the Colorado Department of Labor and, while it could give no assurances, that "the chances [were] good" that an employee in an "at-risk" status (such as claimant), who agreed to a voluntary layoff, would be eligible to receive unemployment compensation. Claimant agreed to a voluntary layoff, was paid severance pay in accordance with a uniform formula, and ceased his employment on October 23, 1993. The following week all of the employees in his unit who were still employed were placed on layoff status.

Claimant filed a claim for unemployment benefits, and his employer did not contest the claim. Indeed, in response to the claim, the employer described claimant's separation in these words:

> Employee was notified his position was at risk of being eliminated and subsequently elected to take voluntary layoff. The employee would have been in a lack of work situation in the immediate future.

Nevertheless, the deputy disqualified claimant because:

> You quit this job in anticipation of a layoff. Information in the record indicates that you could have continued working until the time of your lay-off.
>
> . . . .
>
> You quit without being given a confirmed lay off date.

Claimant appealed to a referee, and a hearing was held at which the employer did not appear. His appeal was denied by the referee on the following basis:

> The referee concludes that the claimant quit his position with this employer to accept a buy out offer in anticipation of an impending layoff. No definite layoff date was established and the claimant chose to accept a separation plan which offered him 41 percent of his annual salary for separating voluntarily. Under these circumstances the separation at the time was at the volition of the claimant.

■ The referee's determination constitutes a legal conclusion that an employee who quits employment in the face of an imminent employment termination by the employer does so volitionally. It is a legal conclusion upon which the courts have disagreed. *See generally* Annotation, *Eligibility for unemployment compensation of employee who left employment based on belief that involuntary discharge was imminent,* 79 A.L.R.4th 528 (1990).

It would appear, however, that a majority of the courts have concluded that, if an employee quits in the reasonable belief that termination is imminent, such termination is not voluntary. *See, e.g., Poteat v. Employment Security Commission,* 319 N.C. 201, 353 S.E.2d 219, 79 A.L.R.4th 519 (1987). In such cases, the employee is entitled to benefits either from the date of the actual termination or from the date that the employee would have been terminated involuntarily. *See* Annotation, *supra,* § 3 at 534–542.

While there are decisions that reach a contrary result, *see* Annotation, *supra,* § 4 at 542–545, we are persuaded that the conclusion that the employment termination is, in such cases, not at the volition of the employee is the correct one.

■ An award of benefits should "be guided by the principle that unemployment insurance is for the benefit of persons unemployed through no fault of their own." Section 8–73–108(1)(a), C.R.S. (1986 Repl.Vol. 3B). Hence, an employee may not be denied benefits under the Colorado statute absent some "fault" on the employee's behalf, *i.e.,* that it was a "volitional" act on the employee's part that caused the employment termination. *Nielsen v. AMI Industries, Inc.,* 759 P.2d 834 (Colo.App.1988); *Frontier Airlines, Inc. v. Industrial Commission,* 719 P.2d 739 (Colo.App.1986). In order for benefits to be denied, therefore, the circumstances surrounding the termination must be one of those that is specifically described in the statute as being disqualifying. *Colorado Division of Employment & Training v. Hewlett,* 777 P.2d 704 (Colo.1989).

■ Here, the undisputed facts demonstrate that claimant's *separation* was not a volitional act on his part. Before any decision was made by him, his employer had determined that his employment termination was both necessary and imminent. He was then given a Hobson's choice—be involuntarily laid off and be placed on a re-employment list, or accept a voluntary layoff, waive all re-employment rights, and receive severance pay. Claimant's choice, therefore, was exercisable only with respect to the *conditions surrounding his separation;* the decision to terminate the employment relationship itself was *not* his, and he exercised no volition with respect to *that* subject.

Further, he made his choice here only after being told, based upon information from the Colorado Department of Labor, that his "chances" were "good" that he would receive unemployment compensation.

Given these undisputed facts, therefore, the conclusion adopted by the referee that the claimant's termination was "under conditions involving personal reasons," *see* § 8–73–108(5)(e)(XXII), is unsupported by anything in this record.

Moreover, both the deputy and the referee appear to have been influenced in their decision by the fact that the claimant had not ·been given a *specific* date for his termination at ·the time he left his employment. Factually, the record makes clear that he would have been involuntarily terminated the following week. But, in any event, no court that has considered the issue has deemed the lack of a specific date to be of any relevance with respect to the employee's eligibility, except to the extent that it might demonstrate a lack of a reasonable belief on behalf of the employee that his termination was imminent. Here, however, the existence of such a belief is undisputed.

For the foregoing reasons, therefore, we conclude that the referee and the Panel employed an improper legal standard in assessing the undisputed facts presented here. We also conclude, as a matter of law, that, if an employee is given notification of a pending layoff, but is offered severance pay in return for a waiver of reemployment rights, which the employee accepts, the resulting employment termination cannot be considered to be the "fault" of the employee. The employment separation in such case must be viewed as no more the voluntary act of the employee than if the employee had refused the offer and the employer had laid him or her off.

Of course, any amount received as severance pay under such circumstances may be required to be credited against any benefits receivable, pursuant to the provisions of § 8–73–110(1)(c), C.R.S. (1994 Cum.Supp.). However, an employee's decision to accept the employer's offer under these circumstances does not render the employee ineligible for unemployment compensation benefits.

The order of the Panel is set aside, and the cause is remanded to it for the entry of an award consistent with the views set forth in this opinion.

METZGER and KAPELKE, JJ., concur.