26CA0236 Schneider v ICAO 06-25-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 26CA0236
Industrial Claim Appeals Office of the State of Colorado
DD No. 20189-2025

---

Jill Schneider,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado and Cherry Creek
School District No. 5,

Respondents.

---

ORDER AFFIRMED

Division V
Opinion by JUDGE YUN
Schutz and Bernard*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 25, 2026

---

Overlook Law PLLC, Craig W. Clark, Hannah M. Cowden, Denver, Colorado, for
Petitioner

No Appearance for Respondent Industrial Claim Appeals Office of the State of
Colorado

Semple, Farrington, Everall & Case, P.C., M. Johnathan Koonce, Denver,
Colorado, for Respondent Cherry Creek School District No 5


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    In this unemployment benefits case, Jill Schneider appeals a final order of the Industrial Claim Appeals Office (the Panel) affirming a hearing officer's decision to disqualify her from receiving benefits following her separation from employment with the Cherry Creek School District (the Employer). We affirm the Panel's final order.

## I.    Background

¶ 2    Schneider worked as a Human Resources Assistant for the Employer. On June 6, 2025, at 7:56 a.m., she emailed her supervisor that she was resigning "effective July 4." In her email, Schneider said she "greatly valued her time working with" the Employer, was "committed to ensuring a smooth transition" during her remaining time, and thanked "the entire HR team for support, guidance and collaboration" throughout her employment. She also said she would not be in that day due to a family matter.

¶ 3    Shortly thereafter, Schneider's supervisor responded that Schneider was still required to attend a scheduled in-person meeting at 9:00 a.m. that morning with Sydney Broders, the Employee Relations Liaison. Schneider was aware of the meeting because, the day before, her supervisor sent her home early and

instructed her to meet with Broders at 9:00 a.m. the next morning, rather than report to work her usual 7:30 a.m. time. The meeting was apparently intended to address concerns that Schneider made unprofessional remarks about not receiving a promotion and requested a coworker to take her place in onboarding the new hire selected for that promotion.

¶ 4 When Schneider did not arrive for the 9:00 a.m. meeting, Broders called and left a voicemail around 9:30 a.m., requesting that Schneider return her call. When Schneider did not respond, Broders left another voicemail advising Schneider that she was being placed on paid administrative leave, but if she failed to come to the office for the meeting, the leave would be unpaid.

¶ 5 Schneider eventually returned Broders's call, explaining that she could not attend the meeting in person and requesting that it be held by phone. Broders denied this request. Schneider then emailed Broders, explaining that her in-person unavailability was due to a "personal matter with my parents." Broders replied as follows:

> You were directed to report to [work] this morning at 9am, and you did not show up. Then when we spoke on the phone just before

noon today, you were again directed to come to [work], at which time you stated that you would not be coming. Refusal to follow the directive that [your supervisor] gave you yesterday and again this morning as well as the directive . . . to report to [work] today is insubordination. As a result, you will not be paid leave time for two weeks and your separation date will be effective today, June 6, 2025. As we discussed via phone, you can either send us your updated written resignation with today's date by 3:00 pm, or your employment with [Employer] will be terminated.

In response, Schneider emailed Broders, "I resign effective immediately."

¶ 6     Alan Lavizzo, the Human Resources Director, emailed Schneider, "Thank you Jill. We will process the separation as a resignation. We will also pack up any personal items that you have. Please let me know of a date next week when you can collect the items."

¶ 7     Following her resignation, Schneider applied for unemployment benefits. A deputy for the Colorado Division of Unemployment Insurance determined that she was disqualified from receiving benefits under section 8-73-108(5)(e)(XXII), C.R.S. 2025 (quitting employment for personal reasons). Schneider then

3

requested a hearing to contest the deputy's determination. The hearing officer affirmed the disqualification but relied on a different provision, section 8-73-108(5)(e)(I) (quitting employment due to dissatisfaction with standard working conditions).

¶ 8     Schneider appealed the hearing officer's decision, and the Panel affirmed. The Panel further modified the disqualifying provision to section 8-73-108(5)(e)(II) (quitting employment because of dissatisfaction with supervision not shown to be other than that reasonably to be expected in the proper performance of work).

## II.     Legal Principles and Standard of Review

¶ 9     We may set aside the Panel's decision only if (1) the Panel acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the findings of fact do not support the decision; or (4) the decision is erroneous as a matter of law. § 8-74-107(6)(a)-(d), C.R.S. 2025. We review de novo ultimate conclusions of fact and ultimate legal conclusions. *Harbert v. Indus. Claim Appeals Off.*, 2012 COA 23, ¶¶ 8-9.

¶ 10     A claimant's entitlement to benefits is determined by the reason for the separation from employment, which is a matter to be resolved by the trier of fact. *Eckart v. Indus. Claim Appeals Off.*,

775 P.2d 97, 99 (Colo. App. 1989). The trier of fact must evaluate the totality of the evidence and determine the motivating factors in the employee's separation. *Id.*

## III.    Analysis

¶ 11    Schneider contends that the Panel erred by disqualifying her from receiving benefits for the following reasons: (1) her separation qualifies as a "termination in lieu of discharge" under section 8-73-108(4)(g), C.R.S. 2025; (2) the hearing officer's factual finding that she "quit because she did not want to attend an in-person meeting" is rebutted by other "hard, certain evidence"; (3) her working conditions were objectively unsatisfactory under section 8-73-108(4)(c); and (4) alternatively, she is entitled to partial benefits under *Diringer v. Industrial Commission*, 712 P.2d 1091 (Colo. App. 1985) because her notice period was shortened by the Employer. We disagree with these contentions.

### A.    First Resignation

¶ 12    Schneider argues that the Panel should have applied section 8-73-108(4)(g), which permits benefits when an employee, "after being given the choice by his employer between being terminated, furloughed, or laid off and replacing another worker, the worker has

elected to accept a termination, furlough, or layoff."  But Schneider did not cite that subsection in her brief to the Panel, and as a general rule, we do not consider arguments not presented to the Panel.  *See McClaflin v. Indus. Claim Appeals Off.*,126 P.3d 288, 289 (Colo. App. 2005) (appellate court declined to consider issue because claimant failed to raise it before the Panel).

¶ 13     Even if we were to consider Schneider's argument, the plain language of section 8-73-108(4)(g) does not support her position. The statute applies only when an employee is offered a choice "between being terminated, furloughed, or laid off and replacing another worker."  *See Keysight Techs., Inc. v. Indus. Claim Appeals Off.,* 2020 COA 29, ¶ 11 ("If the language is clear, we apply [a statute] as written and need not resort to other tools of statutory interpretation.").  Nothing in the record indicates that Schneider was offered such a choice.

¶ 14     Schneider also asserts that the hearing officer and the Panel should have treated her job separation as a "quit in lieu of discharge."  Citing *Goddard v. E G & G Rocky Flats, Inc.*, 888 P.2d 369, 371 (Colo. App. 1994), Schneider argues that a resignation is treated as involuntary if the "employee quits in the reasonable belief

that termination is imminent." But in *Goddard*, the worker was notified that his position was at risk of being eliminated and he chose a voluntary layoff instead, circumstances not present here. *Id.* at 370. Schneider had already submitted her resignation before any termination decision was made.

¶ 15 Schneider acknowledges in her brief that the June 6 meeting was intended to address administrative leave and a possible investigation. Broders testified that the meeting was "not intended to be a due process conversation because I needed to conduct an investigation first." She intended to present a one-page document outlining administrative leave and expectations during that period.

¶ 16 In its initial response to the Division's questionnaire concerning the job separation, the Employer wrote:

> [Schneider] resigned, giving two weeks notice. However, prior to the conclusion of her final two weeks, HR was made aware of allegations of misconduct. In the process of attempting to investigate the allegations, [Schneider] was directed to meet with Employee Relations for due process. [Schneider] refused to meet with the office of Employee relations, and was informed that if she refused to meet, she would be terminated. [Schneider] elected to resign immediately in lieu of meeting with Human Resources.

¶ 17    The hearing officer determined, and the Panel agreed, that "the event that initially triggered [Schneider] to tender her resignation effective July 4, 2025, was the requirement that she attend a scheduled meeting in person."  The hearing officer further found, and the Panel agreed, that "while evidence was presented that the effective date of [her] resignation was hastened after she refused to attend the meeting, this does not change the ultimate nature of [her] volitional act of tendering her resignation in an attempt to forgo attending the scheduled in-person meeting."

¶ 18    We agree that Schneider's first resignation was a voluntary act that resulted in her termination.  *See Cunliffe v. Indus. Claim Appeals Off.,* 51 P.3d 1088, 1090 (Colo. App. 2002) ("When a claimant's voluntary resignation sets in motion the chain of events that ultimately results in unemployment, we cannot say that the claimant was unemployed through no 'fault' of her own.").

¶ 19    To avoid disqualification under section 8-73-108(5)(e) and qualify for benefits, Schneider needed to establish that she became "unemployed through 'no fault' of [her] own."  *Cole v. Indus. Claim Appeals Off.,* 964 P.2d 617, 618 (Colo. App. 1998).  For purposes of the unemployment statutes, "fault" includes a "volitional act or the

8

exercise of some control or choice in the circumstances leading to the discharge from employment such that the claimant can be said to be responsible for the termination." *Richards v. Winter Park Recreational Ass'n*, 919 P.2d 933, 934 (Colo. App. 1996). "Volition" means the power or ability to choose and decide or to exercise some control over the circumstances, as opposed to acting in a manner that is "essentially involuntary" or "accidental." *Starr v. Indus. Claim Appeals Off.*, 224 P.3d 1056, 1065 (Colo. App. 2009).

¶ 20    The hearing officer questioned Schneider about whether her absence from the meeting was due to a family matter or her discomfort with attending the meeting. Schneider answered, "I was very uncomfortable going." When asked, "Why did you tell them it was a family matter," Schneider responded that she was "dealing with some things professionally and personally, and I just wanted to reiterate that I wanted to take leave time that day."

¶ 21    Broders testified that she offered Schneider the option to attend the meeting later that day, but Schneider ultimately refused to attend. Broders also testified that, as a human resources employee, Schneider knew that such meetings required in-person attendance.

¶ 22     It is the hearing officer's responsibility to assess the credibility of witnesses, resolve any conflicts in the evidence, and determine the weight to be accorded the evidence. *See Tilley v. Indus. Claim Appeals Off.*, 924 P.2d 1173, 1177 (Colo. App. 1996). We may interfere with the hearing officer's credibility determinations only in extreme circumstances, such as where the credited testimony is rebutted by "hard, certain evidence," making it error as a matter of law to credit it. *Halliburton Servs. v. Miller*, 720 P.2d 571, 578 (Colo. 1986).

¶ 23     Schneider argues that *Halliburton* applies because, in her view, the hearing officer's credibility findings are rebutted by the Employer's form submitted to the Division, which she interprets as classifying the job separation as "in lieu of discharge." But this interpretation is incorrect. The form identified the "Employer's reason for claimant's separation" as "voluntary quit," and when asked, "What reason did the claimant give for quitting," the response was "in lieu of discharge." Elsewhere in the form, the Employer noted that Schneider "elected to resign immediately in lieu of meeting with human resources."

¶ 24     Schneider further contends that the hearing officer's finding overlooks Broders' testimony that Schneider "resigned her position in lieu of termination due to insubordination." But as the Panel observed, Broder also testified that Scheider submitted the first resignation before the insubordination issue arose. We find no error in the conclusion that Scheider's first resignation was due to her discomfort with attending the scheduled meeting.

¶ 25     Schneider also argues that Broders' email, which gave her a choice between resigning immediately or being terminated, contradicts the finding that her initial resignation triggered the job separation. But this argument disregards the fact that, at the time of her initial resignation, she was not facing immediate termination. Schneider testified that Broders' second voicemail offered administrative leave as an option. Schneider could have attended the meeting to avoid immediate termination, but her choice — refusal to attend the in-person meeting — ultimately led to her resignation. *See Cunliffe*, 51 P.3d at 1090 (an employer who accepts an employee's unequivocal notice of resignation is entitled to rely on it without the risk of being charged for compensation benefits).

¶ 26    Upon reviewing the entire record, we reject Schneider's argument that the hearing officer's findings were rebutted by hard, certain evidence as contemplated by *Halliburton*.

### B.    Second Resignation

¶ 27    Schneider argues that the Employer's actions amounted to a "constructive discharge" and that "the hearing officer failed to recognize that attempts at constructive discharge constitute a substantial change in working conditions under section 8-73-108(4)(c)."

¶ 28    Section 8-73-108(4)(c) entitles an employee to unemployment benefits if the job separation was due to "unsatisfactory or hazardous working conditions." *Id.*  In making this determination, the hearing officer should consider whether the working conditions "are the same or substantially the same as the working conditions generally prevailing among workers performing the same or similar work." *Id.*

¶ 29    Schneider points to several circumstances in support of her claim that her working conditions were unsatisfactory.  For example, she refers to "eighteen months of broken promotion promises and detrimental reliance," the "requirement to fingerprint

and process the external candidate given the promised promotion," her "abrupt and unexplained removal from the workplace on June 5," her "past experiences of hostile treatment in Employee Relations," and a "coercive resign-or-be-fired ultimatum imposed under a two-hour deadline." She alleges that this "hostile treatment" constituted "constructive discharge."

¶ 30 But as the Panel recognized, "constructive discharge" occurs when an employer creates intolerable or hostile working conditions such that a reasonable person would feel compelled to resign. *See, e.g., Krauss v. Cath. Health Initiatives Mountain Region,* 66 P.3d 195 (Colo. App. 2003). The unemployment statutes do not specifically provide for "constructive discharge"; rather, section 8-73-108(4)(c) provides for an award when an employee quits due to dissatisfaction with working conditions.

¶ 31 Whether working conditions are unsatisfactory is determined by an objective standard. *See Rodco Systems, Inc. v. Indus. Claim Appeals Off.,* 981 P.2d 699, 701-02 (Colo. App. 1999) ("[T]he issue is whether a reasonable person in the claimant's position would have found the actual working conditions, as determined by the hearing

officer to have existed, to be so detrimental to that worker's physical or mental well-being as to warrant resignation from employment.").

¶ 32 The hearing officer determined that the meeting Schneider was required to attend was part of the Employer's standard investigative process and was not unreasonable under the circumstances. Because in-person attendance was the standard procedure for such meetings, the hearing officer concluded that this requirement constituted a standard working condition generally prevailing among similarly situated employees.

¶ 33 As for Schneider's other complaints, we agree with the Panel that she failed to show her working conditions were objectively unsatisfactory under section 8-73-108(4)(c). That provision considers factors such as: (1) the degree of risk to the worker's health, safety, or morals; (2) the worker's physical fitness, prior training, experience, and prior earnings; (3) the distance of work from the worker's residence; and (4) the working conditions of others performing the same or similar work in the locality. *Id.*

¶ 34 The Panel ultimately concluded that a reasonable person in Schneider's position would not have considered her working

conditions so unsatisfactory, as defined by statute, as to require resignation.  We discern no error in this determination.

## C. *Diringer* Benefits

¶ 35    Schneider relies on *Diringer* to argue that she is entitled to partial benefits because her notice period was shortened by the Employer.  We disagree.

¶ 36    In *Diringer,* the claimant — a law firm associate — told the partners in early June that he would probably be leaving the firm in September to move to California so his wife could pursue a graduate degree.  *Diringer*, 712 P.2d at 1091.  A partner told him a few days later that the firm planned to hire a replacement as soon as possible, making his status with the firm uncertain.  *Id.*  At that time, the claimant reiterated his desire to stay with the firm through September.  *Id.*

¶ 37    On June 29, the claimant was told that his last day would be June 30 even though no replacement had been hired.  *Id.*  The firm stated that there would have been no issue with his continued employment had he not announced his intent to leave in September.  *Id.*

15

¶ 38　　On appeal, a division of this court held that "an employee terminated under these circumstances is eligible for a full award of benefits for this period." *Id.* at 1092.  Specifically, the division explained that the "claimant cannot be said to have chosen to be unemployed and unpaid during the period between [his] termination and the effective date of [his] resignation." *Id.*  Thus, he was unemployed through no fault of his own during that period.  *Id.*

¶ 39　　Unlike *Diringer*, however, Schneider failed to follow the Employer's policies during her notice period.  At the hearing, the Employer's counsel asked Schneider a question about her first resignation: "So during that period between June 6th and July 4th, would you have continued to be employed?"  Schneider answered, "Yes, based on my resignation, correct."  Counsel then asked, "So based on that, would you still be subject to directives from your employer?"  Schneider responded, "Yes."  Then, counsel asked her, "Did you receive a directive to come into the building that day to meet with Ms. Broders?"  Schneider again answered, "Yes."  Finally, counsel asked if she complied with that directive to which Schneider responded, "I did not."

¶ 40    After considering this testimony as well as the entire record, we discern no error in the Panel's conclusion that *Diringer* does not apply. Schneider's desire to stay until July 4 did not obligate the Employer to accept her proposed separation date, when she refused to follow the Employer's directives during the notice period. *See Cunliffe*, 51 P.3d at 1089 ("Thus, we conclude that, for unemployment compensation purposes, a voluntary resignation is an unconditional event, the legal significance and finality of which are not altered by the interval between the employee's notice and his or her departure from the job.").

## IV.   Disposition

¶ 41    We affirm the Panel's order.

JUDGE SCHUTZ and JUDGE BERNARD concur.